IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BUTTE COUNTY, CALIFORNIA<br>25 County Center Drive<br>Oroville, California 95965<br><br>    Plaintiff,<br><br>  v.<br><br>PHILIP N. HOGEN<br>National Indian Gaming Commission<br>1441 L Street, N.W. – Suite 9100<br>Washington, D.C. 20005<br><br>NORMAN H. DesROSIERS<br>National Indian Gaming Commission<br>1441 L Street, N.W. – Suite 9100<br>Washington, D.C. 20005<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

### PRELIMINARY STATEMENT

Butte County reluctantly files this litigation. Indeed, the County did everything possible to avoid having to do so. However, the County's attempts to resolve the dispute over siting of a proposed casino were repeatedly and abjectly rejected by the Mechoopda Tribe. The Tribe simply refused to consider any other site. The Tribe's rejection of an amicable resolution of the matter has left the County with no recourse other than this litigation. Finally, it is emphasized that the County does not question the Tribe's recognition or sovereignty.

### NATURE OF THE ACTION

1. Pursuant to 28 U.S.C. § § 2201-2202, plaintiff Butte County, California ("Butte County" or "County"), seeks declaratory and injunctive relief against the

National Indian Gaming Commission ("NIGC"), by and through its Chairman Philip N. Hogen and its Commissioner Norman H. DesRosiers. The County challenges the NIGC approval under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.* ("IGRA"), of an Amendment to the Tribal-Gaming Ordinance of the Mechoopda Indian Tribe of the Chico Rancheria ("Amended Ordinance") regulating tribal gaming at a casino site within Butte County. The challenged action was taken on February 8, 2007, pursuant to IGRA Section 13(b), 25 U.S.C. § 2712(B), and is a final agency decision for the purposes of appeal to this court under IGRA Section 15, 25 U.S.C. § 2714, and 5 U.S.C. .§ § 701-706.

## PARTIES

2. Plaintiff Butte County, a political subdivision of the State of California, is a body corporate and politic governed by its Board of Supervisors.

3. Sued in his official capacity, Philip N. Hogen is Chairman of the National Indian Gaming Commission.

4. Sued in his official capacity, Norman H. DesRosiers is a Commissioner on the National Indian Gaming Commission.

5. The National Indian Gaming Commission consists of a Chairman and two Commissioners. However, one of the two Commissioner positions (formerly occupied by Cloyce V. Choney) currently is vacant.

## JURISDICTION

6. This Court has jurisdiction under 28 U.S.C. § § 1331 and 2201 because this action presents questions arising under federal law. The United States has consented to this action under 5 U.S.C. § § 701-706 and 25 U.S.C. § 2714.

## VENUE

7.  Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because the defendants reside and may be found here.

## FACTUAL BACKGROUND

8.  On October 17, 1988, Congress enacted IGRA for the purposes, *inter alia*, of providing statutory limitations on the operation of gaming facilities by Indian tribes on Indian lands by strictly limiting the locations on which Indian tribes may conduct gaming, requiring that tribes enter into gaming compacts with the states before commencing certain gaming operations, and requiring that tribes adopt Tribal Gaming Ordinances and secure NIGC approval thereof before commencing certain gaming operations.

9.  IGRA provides that the Mechoopda Indian Tribe of the Chico Rancheria ("Tribe") may operate a casino offering "Class III gaming" – as defined at IGRA Section 4(8), 25 U.S.C. § 2703(8) – only if the casino gaming activity is conducted (a) on land which qualifies for gaming under IGRA and (b) in conformance with a Tribal Gaming Ordinance which has been approved by the NIGC.

10. IGRA narrowly defines "Indian lands" at IGRA Section 4(4), 25 U.S.C. § 2703(4), as those lands that as of October 17, 1988, were –

    (A)   … lands within the limits of any Indian reservation; and

    (B)   … lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

11. IGRA also permits gaming on lands acquired subsequent to October 17,

1988, which qualify for enumerated exemptions, including the "restored lands" exemption established by IGRA Section 20(b)(1)(B)(iii), 25 U.S.C. § 2719(b)(1)(B)(iii), and defined as –

> (B)    lands... taken into trust as part of –
> * * *
>   (iii) the restoration of lands for an Indian tribe that is restored to Federal recognition.

12.    The Tribe is federally recognized by the Secretary of the Interior pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 461, *et seq.* ("IRA").

13.    The Tribe claims that it is the successor to a historic Mechoopda Band which entered into a treaty with the United States in 1851, a treaty which never was ratified by the United States Senate.

14.    The Tribe claims that its IRA recognition constituted a restoration of tribal recognition evidenced by the 1851 treaty negotiations with the United States, and accordingly entitles it to conduct gaming on lands which are now "restored" to it through purchase.

15.    The Tribe and its casino developers have purchased land in Butte County consisting of 630 acres which they claim qualifies as "restored" land under IGRA and propose to develop and operate a casino to be owned by the Tribe and managed by the casino developers (known herein as "Proposed Site").

16.    The Proposed Site, which is specifically identified in the Amended Ordinance as the location for the proposed casino project, is described as follows:

> All that certain real property situate in the County of Butte, State of California, described as follows: that part of the east half of the northeast quarter which lies northeasterly of Highway 99 and the Oroville Chico Road, in section 1, township 20 north, range 2 east, M.D.B.&M.

17. The Proposed Site is specifically identified as the location for the proposed casino project in the Tribe's Environmental Assessment filed with the NIGC as part of the Tribe's application for approval of a Management Contract pursuant to which its gaming developer would manage the proposed casino project.

18. The Proposed Site is specifically identified as the location for the proposed casino project in the Tribe's Environmental Assessment filed with the United States Department of the Interior as part of the Tribe's application to have the Project Site accepted into trust for gaming.

19. The Proposed Site is specifically identified as the location for the proposed casino project in the "Finding Of No Significant Impact" recently rendered by the Department of the Interior in concluding that no formal Environmental Impact Statement will be required for its final review of, and decision on, the Tribe's application to have the Proposed Site accepted into trust for gaming.

20. The NIGC's Acting General Counsel rendered a land determination dated March 14, 2003, which concluded that the Proposed Site will qualify as "restored land" of a restored tribe under IGRA Section 20(b)(1)(B)(iii) once it has been taken into trust and, thus, is a location on which gaming lawfully may be conducted by the Tribe.

21. All decisions relevant to this dispute rendered by the NIGC subsequent to March 14, 2003, have been based on the NIGC Acting General Counsel's conclusion that the Proposed Site will constitute "restored land" for a restored tribe under IGRA Section 20(b)(1)(B)(iii) once it has been taken into trust.

22. The Tribe previously occupied land known as the Chico Rancheria which was transferred out of federal ownership during the "termination" era when many tribes,

tribal reservations, federal fee land occupied by individual Indians, and California Rancheria lands lost their federal status and were conveyed to individuals and other non-federal individuals and entities.

23. The Tribe does not now own or occupy any portion of the former Chico Rancheria.

24. Prior to federal ownership of the land which constituted the Chico Rancheria, the property was owned in fee by a married couple named John and Annie Bidwell and operated as a ranch (the "Bidwell Ranch").

25. The ancestors of the current tribal membership lived and worked on the Bidwell Ranch as employees of the Bidwells.

26. The employees of the Bidwell Ranch were people the Bidwells hired to work on their ranch and permitted to live in a specific area therein (known herein as the "Indian village") which the Bidwells selected as the housing area for their employees.

27. The Bidwells alone decided who could live on the Bidwell Ranch.

28. Annie Bidwell periodically expelled from the Indian village various resident employees, including Indians, who lived lifestyles of which she did not approve.

29. In 1914, W. C. Randolph of the Bureau of Indian Affairs ("BIA") visited the Indian village on the Bidwell Ranch and observed: "I do not believe that these Indians belong to any particular band, but are remnants of various small bands, originally living in Butte and nearby counties." Randolph identified no tribe as having a beneficial interest or control over the village on the Bidwell Ranch.

30. The BIA conducted a formal federal enrollment of California Indians in 1928-33 and enumerated many of the Indians living on what by then was known as the

Chico Rancheria. The affidavits executed by the Indian village residents themselves as an integral element of the federal enrollment document that the village population consisted of people of Wailaki, Concow, Noi-ma (Mue-muck), Mi-chop-da, Sioux, Pit River, Yuki (Ukie), Wintun, Hawaiian, African-American, and white ancestry. The federal census records also document that some of the Indian village residents could not even name or identify the Indian band or tribe from which they were descended.

31.    In 1935, BIA Commissioner John Collier ruled that the Chico Rancheria was not a government reservation and its residents were therefore ineligible to vote on acceptance or rejection of the Indian Reorganization Act, a vote which the IRA mandated was to be extended to members of tribes and individual Indians occupying federal reservations throughout the United States.

32.    During the period of 1939 to 1950, there is no evidence of any community government on the Chico Rancheria; to the contrary, there is evidence of a lack of such community government such as the report written in 1955 by BIA Area Director Leonard W. Hill that "no formal election has ever been held or any organization perfected" by the resident group from which the current Mechoopda Tribe is directly descended.

33.    The residents of the Chico Rancheria drafted a Constitution in 1955, which was redrafted by the BIA in the spring of 1958 and approved by the Commissioner of Indian Affairs on January 21, 1959, even though the Rancheria by then had no federal status by virtue of the federal California Rancheria Termination Act of August 18, 1958, Public Law 85-671.

34.    Article 3 of the Tribe's approved Constitution defined membership in the "Machoopda Indian Band" as "All persons of Indian blood living on March 1, 1958,

whose names appear on the list of beneficiaries in the will of Mrs. Annie E. K. Bidwell" and, secondly, "All children born to members of the Machoopda Indian Band, including children born to beneficiaries named in Mrs. Bidwell's will, even although such beneficiaries were not living on March 1, 1958."

35. Membership of the Tribe as it was constituted in 1958 was defined by the BIA-approved Constitution as people who qualified under the requirements of Annie Bidwell's will, which established qualification solely on the basis of moral values and not on tribal affiliation or even the existence of a tribe.

36. The Chico Rancheria was a place of residency of Indians whose entitlement to live there was a function not of tribe, nor language, nor ethnicity, but of the dictates of John and Annie Bidwell as to the moral behavior of their former employees and their descendants.

37. The federal government accepted the Bidwells' restrictions on who could reside on and participate in activities at the Chico Rancheria, both in revising and approving the tribal Constitution and in distributing Chico Rancheria assets as part of the termination of the Rancheria.

38. The modern Mechoopda Tribe is not descended from a historical tribe, but rather is a tribe descended solely from the disparate group of Indian and non-Indian residents of the Bidwell Ranch.

39. The only land ever occupied in common by the ancestors of the modern Mechoopda tribal membership was the Indian village on the Bidwell Ranch which was designated as the site for their residency by the Bidwells.

40. The former Chico Rancheria is the only land to which the current Mechoopda tribal members can document any historic ties or connections as a group.

41. The Proposed Site is not within or contiguous to the former Chico Rancheria, but rather is located miles away from its boundaries.

### COUNT I
### (Declaratory Judgment – Amended Ordinance Void *Ab Initio*)

42. Plaintiff realleges and incorporates by reference paragraphs 1-41 above.

43. The NIGC approved the Amended Ordinance on February 8, 2007, and authorized gaming for the Mechoopda Tribe on the Proposed Site as "restored lands" under Section 20(b)(1)(B)(iii).

44. The Proposed Site is not restored land for the Mechoopda Tribe because it is not land which the tribe ever occupied or owned as a tribe.

45. Because the Amended Ordinance purports to approve gaming at a site within Butte County which does not legally qualify for gaming, plaintiff is entitled to a declaratory judgment that the Amended Ordinance approval is void *ab initio*.

### COUNT II
### (Declaratory Judgment – Requisite "Indian lands" Determination")

46. Plaintiff realleges and incorporates by reference paragraphs 1-41 and 43-44 above.

47. The NIGC approved the Amended Ordinance on the basis of the March 14, 2003, land determination rendered by its Acting General Counsel, although the land determination failed to reconcile its conclusions with the facts of the Tribe's history which directly contradict the facts required for "restored lands" status under IGRA.

48. Because the NIGC's approval of the Amended Ordinance was made on

the basis of the March 14, 2003, land determination without regard to the Proposed Site's failure to qualify as "restored lands" under IGRA, plaintiff is entitled to a declaratory judgment that approval was unlawful and is of no force or effect.

## COUNT III
### (Mandatory Injunction – Revocation of NIGC Approval)

49.  Plaintiff realleges and incorporates by reference paragraphs 1-41, 43-44 and 47 above.

50.  Congress authorized Class III gaming only on lands qualifying for gaming under IGRA, so the NIGC approval of the Amended Ordinance is lawful only if the Proposed Site satisfies the requirements for "restored land" status under IGRA Section 20(b)(1)(B)(iii).

51.  Because the land comprising the Proposed Site is not land which qualifies as "restored lands" under IGRA Section 20(b)(1)(B)(iii), the NIGC's approval of the Amended Ordinance was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, beyond the scope of the NIGC's authority under IGRA, and issued in a manner not in accordance with law.

52.  The Class III Indian casino project allowed by the NIGC's approval of the Amended Ordinance would cause the County to suffer irreparable harm for which there is no adequate remedy at law.

53.  Plaintiff is entitled to a mandatory injunction directing the defendants to revoke and vacate the NIGC's approval of the Amended Ordinance.

## COUNT IV
### (Prohibitory Injunction – "Indian lands" Requirement)

54.  Plaintiff realleges and incorporates by reference paragraphs 1-41, 43-44,

47 and 50-52 above.

55.  Congress authorized Class III gaming activities only on land which qualifies for gaming under IGRA.

56.  Because the lands comprising the Proposed Site do not qualify for gaming under IGRA, any action by the NIGC which would allow the Tribe to conduct Class III gaming on the Proposed Site would be arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, beyond the scope of the NIGC's authority under IGRA, and not in accordance with law.

57.  Any NIGC authorization of an illegal Class III Indian casino within Butte County, through tribal gaming ordinance approval or otherwise, will cause the County to suffer irreparable harm for which there is no adequate remedy at law.

58.  Plaintiff is entitled to a prohibitory injunction prohibiting the defendants from authorizing or sanctioning the conduct of Class III gaming activities on the Proposed Site.

## COUNT V
### (Declaratory Judgment – No Historic Tribal Presence)

59.  Plaintiff realleges and incorporates by reference paragraphs 1-41, 43-44, 47, 50-52 and 55-57 above.

60.  IGRA requires that gaming can only be conducted by the Tribe on the Proposed Site if it qualifies for gaming under IGRA.

61.  There was no historic tribe at the Bidwell Ranch or Chico Rancheria and there were no lands occupied or owned in common by the ancestors of the current Mechoopda tribal membership other than the Bidwell Ranch or Chico Rancheria.

62.  Because there was no land commonly occupied by the ancestors of the

current Mechoopda tribal membership other than the Bidwell Ranch or Chico Rancheria, the Amended Ordinance cannot authorize gaming on "restored lands" for the Tribe other than on land within the former Bidwell Ranch or Chico Rancheria.

63.  Because the NIGC's approval of the Amended Ordinance was made without regard to the fact that the Proposed Site was never owned or occupied by the ancestors of the current Mechoopda tribal membership, plaintiff is entitled to a declaratory judgment that the approval was unlawful and is of no force or effect.

## COUNT VI
### (Prohibitory Injunction – Revocation of NIGC Approval)

64.  Plaintiff realleges and incorporates by reference paragraphs 1-41, 43-44, 47, 50-52, 55-57 and 60-62 above.

65.  Congress authorized Class III gaming activities only on "Indian lands" as defined by IGRA.

66.  Because the lands comprising the Proposed Site are not "restored lands" as defined by IGRA, any action by the NIGC which would allow the Tribe to conduct Class III gaming on the Proposed Site as "restored land" would be arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, beyond the scope of the NIGC's authority under IGRA, and not in accordance with law.

67.  The NIGC's authorization of an illegal Class III Indian casino within Butte County will cause the County to suffer irreparable harm for which there is no adequate remedy at law.

68.  Plaintiff is entitled to a prohibitory injunction prohibiting the defendants from authorizing or sanctioning the conduct of Class III gaming activities on the Proposed Site.

## **REQUESTED RELIEF**

**WHEREFORE,** plaintiff respectfully requests that the Court enter an order as follows:

A. Declaring that because the Amended Ordinance purports to approve gaming at a site within Butte County which does not legally qualify for gaming, the Amended Ordinance approval is void *ab initio*.

B. Declaring that because the NIGC's approval of the Amended Ordinance was made without regard to the Proposed Site's failure to qualify as "restored lands" under IGRA, the approval was unlawful and is of no force or effect.

C. Directing the defendants to revoke and vacate the NIGC's approval of the Amended Ordinance.

D. Enjoining the defendants from authorizing or sanctioning the conduct of Class III gaming activities on the Proposed Site.

E. Declaring that because the NIGC's approval of the Amended Ordinance was made in derogation of the fact that the Proposed Site was never owned or occupied by the predecessor group to the current Tribe, that approval was unlawful and is of no force or effect.

F. Enjoining the defendants from authorizing or sanctioning the conduct of Class III gaming activities on the Proposed Site.

G. Awarding plaintiff its costs, attorneys' fees, and all other expenses of this litigation.

      H.    Awarding plaintiff such other and further relief as the Court deems just and proper.

DATED this 26th day of March 2008.

BUTTE COUNTY, CALIFORNIA

By Counsel

_____
Dennis J. Whittlesey (D.C. Bar No. 053322)
DICKINSON WRIGHT PLLC
1901 L Street, N.W. - Suite 800
Washington, D.C. 20036
Telephone: (202) 659-6928
Facsimile: (202) 659-1559

**OF COUNSEL:**

Bruce Alpert, Esquire
County Counsel
COUNTY OF BUTTE
25 County Center Drive
Oroville, California 95965

Scott R. Knapp, Esquire
DICKINSON WRIGHT PLLC
215 South Washington Square – Suite 200
Lansing, Michigan 48933

H. Scott Althouse, Esquire
DICKINSON WRIGHT PLLC
1901 L Street, N.W. - Suite 800
Washington, D.C. 20036

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
Butte County, California

## DEFENDANTS
Philip N. Hogen, and Norman H. DesRosiers, National Indian Gaming Commission

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Butte County, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  District of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Dennis J. Whittlesey
Dickinson Wright PLLC
1901 L St. NW, Suite 800
Washington, DC 20036

ATTORNEYS (IF KNOWN)

Case: 1:08-cv-00519
Assigned To : Kennedy, Henry H.
Assign. Date : 3/26/2008
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊙ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ⊙ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
5 U.S.C. § 706 (review administrative action) and 28 U.S.C. §§ 2201-2202 for violations of the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____ Check YES only if demanded in complaint    JURY DEMAND: YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE March 26, 2008    SIGNATURE OF ATTORNEY OF RECORD [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.