# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BUTTE COUNTY, CALIFORNIA** )<br>25 County Center Drive )<br>Oroville, California 95965 )<br>       )<br>            Plaintiff,   )<br>       )       Civil Action No. 1:08CV00519 (HHK)<br>       v.      )<br>       )<br>**PHILIP N. HOGEN** )<br>National Indian Gaming Commission )<br>1441 L Street, N.W. – Suite 9100 )<br>Washington, D.C. 20005 )<br>       )<br>**NORMAN H. D**ᴇs**ROSIERS** )<br>National Indian Gaming Commission )<br>1441 L Street, N.W. – Suite 9100 )<br>Washington, D.C. 20005 )<br>       )<br>**DIRK A. KEMPTHORNE** )<br>Secretary )<br>United States Department of the Interior )<br>1849 C Street, N.W. )<br>Washington, D.C. 20240 )<br>       )<br>**CARL J. ARTMAN** )<br>Assistant Secretary - Indian Affairs )<br>United States Department of the Interior )<br>1849 C Street, N.W. )<br>Washington, D.C. 20240 )<br>       )<br>**UNITED STATES DEPARTMENT** )<br>    **OF THE INTERIOR** )<br>United States Department of the Interior )<br>1849 C Street, N.W. )<br>Washington, D.C. 20240 )<br>       )<br>            Defendants.  )<br>_____ ) | |

# FIRST AMENDED COMPLAINT FOR
# DECLARATORY AND INJUNCTIVE RELIEF

**PRELIMINARY STATEMENT**

Butte County reluctantly files this litigation. Indeed, the County did everything possible to avoid having to do so. However, the County's attempts to resolve the dispute over siting of a proposed casino were repeatedly and abjectly rejected by the Mechoopda Tribe. The Tribe simply refused to consider any other site. The Tribe's rejection of an amicable resolution of the matter has left the County with no recourse other than this litigation. Finally, it is emphasized that the County does not question the Tribe's recognition or sovereignty.

**NATURE OF THE ACTION**

1. Pursuant to 28 U.S.C. §§ 2201-2202, plaintiff Butte County, California ("Butte County" or "County"), seeks declaratory and injunctive relief against the National Indian Gaming Commission ("NIGC"), by and through its Chairman Philip N. Hogen and its Commissioner Norman H. DesRosiers. The County challenges the NIGC approval under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.* ("IGRA"), of an Amendment to the Tribal-Gaming Ordinance of the Mechoopda Indian Tribe of the Chico Rancheria ("Amended Ordinance") regulating tribal gaming at a casino site within Butte County. The challenged NIGC action was taken on February 8, 2007, pursuant to IGRA Section 13(b), 25 U.S.C. § 2712(B), and is a final agency decision for the purposes of appeal to this Court under IGRA Section 15, 25 U.S.C. § 2714, and 5 U.S.C. §§ 701-706.

2. Pursuant to 28 U.S.C. §§ 2201-2202, Butte County, California seeks declaratory and injunctive relief against the United States Department of the Interior ("Interior" or "Department"), its Secretary Dirk A. Kempthorne, and its Assistant Secretary for Indian Affairs, Carl J. Artman or his successor (referred to herein as "Artman" and "Assistant Secretary"). The County challenges the Assistant Secretary's approval of an application to accept land located in Butte County into trust for tribal

2

gaming pursuant to IGRA. The challenged action was taken on May 8, 2007, pursuant to 25 U.S.C. § 465 and its implementing regulations at 25 C.F.R. Part 151.I. The challenged action is final for the Department for the purposes of appeal to this Court under 5 U.S.C. §§ 701-706.

## PARTIES

3.      Plaintiff Butte County, a political subdivision of the State of California, is a body corporate and politic governed by its Board of Supervisors.

4.      Sued in his official capacity, Philip N. Hogen is Chairman of the National Indian Gaming Commission.

5.      Sued in his official capacity, Norman H. DesRosiers is a Commissioner on the National Indian Gaming Commission.

6.      The National Indian Gaming Commission consists of a Chairman and two Commissioners. However, one of the two Commissioner positions (formerly occupied by Cloyce V. Choney) currently is vacant.

7.      Sued in his official capacity, Dirk A. Kempthorne is Secretary of the United States Department of the Interior.

8.      Sued in his official capacity, Carl J. Artman is the Assistant Secretary for Indian Affairs, United States Department of the Interior, who made the decision to accept the Butte County land into trust for tribal gaming. Subsequent to rendering the trust acceptance decision at issue, Mr. Artman resigned as Assistant Secretary and, as of the date of this filing, his successor has not been appointed.

9.      The United States Department of the Interior is an executive department of the government of the United States of America.

## JURISDICTION

10. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 2201 because this action presents questions arising under federal law. The United States has consented to this action under 5 U.S.C. §§ 701-706 and 25 U.S.C. § 2714.

## VENUE

11. Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because the defendants reside and may be found here.

## FACTUAL BACKGROUND

12. On October 17, 1988, Congress enacted IGRA for the purposes, *inter alia*, of providing statutory limitations on the operation of gaming facilities by Indian tribes on Indian lands by strictly limiting the locations on which Indian tribes may conduct gaming, requiring that tribes enter into gaming compacts with the states before commencing certain gaming operations, and requiring that tribes adopt Tribal Gaming Ordinances and secure NIGC approval thereof before commencing certain gaming operations.

13. IGRA provides that the Mechoopda Indian Tribe of the Chico Rancheria ("Mechoopda Tribe" or "Tribe") may operate a casino offering (a) "Class II gaming" and "Class III gaming" – as defined at IGRA Section 4(7) and (8), 25 U.S.C. § 2703(7) and (8) – only if the casino gaming activity is conducted on land which qualifies for gaming under IGRA, that is on "Indian lands," and (b) Class III gaming in conformance with a Tribal Gaming Ordinance which has been approved by the NIGC.

14. IGRA narrowly defines "Indian lands" at IGRA Section 4(4), 25 U.S.C.

§ 2703(4), as those lands that as of October 17, 1988, were –

    (A)    … lands within the limits of any Indian reservation; and

    (B)    … lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

15. IGRA also permits gaming on lands acquired subsequent to October 17, 1988, which qualify for enumerated exemptions, including the "restored lands" exemption established by IGRA Section 20(b)(1)(B)(iii), 25 U.S.C. § 2719(b)(1)(B)(iii), and defined as –

    (B)    lands… taken into trust as part of –
        \*   \*   \*
        (iii) the restoration of lands for an Indian tribe that is restored to Federal recognition.

16. The Tribe is federally recognized by the Secretary of the Interior pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 461, *et seq.* ("IRA").

17. The Tribe claims that it is the successor to a historic Mechoopda Band which entered into a treaty with the United States in 1851, a treaty which never was ratified by the United States Senate.

18. The Tribe claims that its IRA recognition constituted a restoration of tribal recognition evidenced by the 1851 treaty negotiations with the United States, and accordingly entitles it to conduct gaming on lands which are now "restored" to it through purchase.

19. The Tribe's casino developers have purchased and own land in Butte County consisting of 630 acres which they and the Tribe claim qualifies as "restored land" under IGRA and propose to develop and operate a casino to be owned by the Tribe

and managed by the casino developers (known herein as "Proposed Site").  Title is to the Proposed Site is in the name of an entity owned by the Tribe's developers; the Tribe does not currently own the land and likely will not own the land until this litigation has been concluded.

20. The Proposed Site, which is specifically identified in the Amended Ordinance as the location for the proposed casino project, is described as follows:

> All that certain real property situate in the County of Butte, State of California, described as follows:  that part of the east half of the northeast quarter which lies northeasterly of Highway 99 and the Oroville Chico Road, in section 1, township 20 north, range 2 east, M.D.B.&M.

21. The Proposed Site is specifically identified as the location for the proposed casino project in the Tribe's Environmental Assessment filed with the NIGC as part of the Tribe's application for approval of a Management Contract pursuant to which its gaming developer would manage the proposed casino project.

22. The Proposed Site is specifically identified as the location for the proposed casino project in the Tribe's Environmental Assessment filed with the United States Department of the Interior as part of the Tribe's application to have the Project Site accepted into trust for gaming.

23. The Proposed Site is specifically identified as the location for the proposed casino project in the "Finding Of No Significant Impact" recently rendered by the Department of the Interior in concluding that no formal Environmental Impact Statement will be required for its final review of, and decision on, the Tribe's application to have the Proposed Site accepted into trust for gaming.

24. The NIGC's Acting General Counsel rendered a land determination dated March 14, 2003, which concluded that the Proposed Site will qualify as "restored land" of

a restored tribe under IGRA Section 20(b)(1)(B)(iii) once it has been taken into trust and, thus, is a location on which gaming lawfully may be conducted by the Tribe.

25. All decisions relevant to this dispute rendered by the NIGC, Interior and the Assistant Secretary subsequent to March 14, 2003, have been based on the NIGC Acting General Counsel's conclusion that the Proposed Site will constitute "restored land" for a restored tribe under IGRA Section 20(b)(1)(B)(iii) once it has been taken into trust.

26. The Tribe previously occupied land known as the Chico Rancheria which was transferred out of federal ownership during the "termination" era when many tribes, tribal reservations, federal fee land occupied by individual Indians, and California Rancheria lands lost their federal status and were conveyed to individuals and other non-federal individuals and entities.

27. The Tribe does not now own or occupy any portion of the former Chico Rancheria.

28. Prior to federal ownership of the land which constituted the Chico Rancheria, the property was owned in fee by a married couple named John and Annie Bidwell and operated as a ranch (the "Bidwell Ranch").

29. The ancestors of the current tribal membership lived and worked on the Bidwell Ranch as employees of the Bidwells.

30. The employees of the Bidwell Ranch were people the Bidwells hired to work on their ranch and permitted to live in a specific area therein (known herein as the "Indian village") which the Bidwells selected as the housing area for their employees.

31. The Bidwells alone decided who could live on the Bidwell Ranch.

32. Annie Bidwell periodically expelled from the Indian village various resident employees, including Indians, who lived lifestyles of which she did not approve.

33. In 1914, W. C. Randolph of the Bureau of Indian Affairs ("BIA") visited the Indian village on the Bidwell Ranch and observed: "I do not believe that these Indians belong to any particular band, but are remnants of various small bands, originally living in Butte and nearby counties." Randolph identified no tribe as having a beneficial interest or control over the village on the Bidwell Ranch.

34. The BIA conducted a formal federal enrollment of California Indians in 1928-33 and enumerated many of the Indians living on the Bidwell Ranch which at some point in time became known as the "Chico Rancheria." The affidavits executed by the Indian village residents themselves as an integral element of the federal enrollment document that the village population consisted of people of Wailaki, Concow, Noi-ma (Mue-muck), Mi-chop-da, Sioux, Pit River, Yuki (Ukie), Wintun, Hawaiian, African-American, and white ancestry. The federal census records also document that some of the Indian village residents could not even name or identify the Indian band or tribe from which they were descended.

35. In 1935, BIA Commissioner John Collier ruled that the Chico Rancheria was not a government reservation and its residents were therefore ineligible to vote on acceptance or rejection of the Indian Reorganization Act, a vote which the IRA mandated was to be extended to members of tribes and individual Indians occupying federal reservations throughout the United States.

36. During the period of 1939 to 1950, there is no evidence of any community government on the Chico Rancheria; to the contrary, there is evidence of a lack of such

8

community government such as the report written in 1955 by BIA Area Director Leonard W. Hill that "no formal election has ever been held or any organization perfected" by the resident group from which the Tribe is directly descended.

37. The residents of the Chico Rancheria drafted a Constitution in 1955, which was redrafted by the BIA in the spring of 1958 and approved by the Commissioner of Indian Affairs on January 21, 1959, even though the Rancheria by then had no federal status by virtue of the federal California Rancheria Termination Act of August 18, 1958, Public Law 85-671.

38. Article 3 of the Tribe's approved Constitution defined membership in the "Machoopda Indian Band" as "All persons of Indian blood living on March 1, 1958, whose names appear on the list of beneficiaries in the will of Mrs. Annie E. K. Bidwell" and, secondly, "All children born to members of the Machoopda Indian Band, including children born to beneficiaries named in Mrs. Bidwell's will, even although such beneficiaries were not living on March 1, 1958."

39. Membership of the Tribe as it was constituted in 1958 was defined by the BIA-approved Constitution as people who qualified under the requirements of Annie Bidwell's will, which established qualification solely on the basis of moral values and not on tribal affiliation or even the existence of a tribe.

40. The Chico Rancheria was a place of residency of Indians whose entitlement to live there was a function not of tribe, nor language, nor ethnicity, but of the dictates of John and Annie Bidwell as to the moral behavior of their former employees and their descendants.

41. The federal government accepted the Bidwells' restrictions on who could

reside on and participate in activities at the Chico Rancheria, both in revising and approving the tribal Constitution and in distributing Chico Rancheria assets as part of the termination of the Rancheria.

42. The modern Mechoopda Tribe is not descended from a historical tribe, but rather is a tribe descended solely from the disparate group of Indian and non-Indian residents of the Bidwell Ranch.

43. The only land ever occupied in common by the ancestors of the modern Mechoopda tribal membership was the Indian village on the Bidwell Ranch which was designated as the site for their residency by the Bidwells.

44. The former Chico Rancheria is the only land to which the current Mechoopda tribal members can document any historic ties or connections as a group.

45. The Proposed Site is not within or contiguous to the former Chico Rancheria, but rather is located miles away from its boundaries.

## COUNT I
### (Declaratory Judgment – Amended Ordinance Void *Ab Initio*)

46. Plaintiff realleges and incorporates by reference paragraphs 1-45 above.

47. The NIGC approved the Amended Ordinance on February 8, 2007, and authorized gaming for the Mechoopda Tribe on the Proposed Site as "restored lands" under Section 20(b)(1)(B)(iii).

48. The Proposed Site is not restored land for the Mechoopda Tribe because it is not land which the Tribe ever occupied or owned as a tribe.

49. Because the Amended Ordinance purports to approve gaming at a site within Butte County which does not legally qualify for gaming, plaintiff is entitled to a declaratory judgment that the Amended Ordinance approval is void *ab initio*.

## COUNT II
### (Declaratory Judgment – Requisite "Indian lands" Determination")

50.     Plaintiff realleges and incorporates by reference paragraphs 1-45 and 47-48 above.

51.     The NIGC approved the Amended Ordinance on the basis of the March 14, 2003, land determination rendered by its Acting General Counsel, although the land determination failed to reconcile its conclusions with the facts of the Tribe's history which directly contradict the facts required for "restored lands" status under IGRA.

52.     Because the NIGC's approval of the Amended Ordinance was made on the basis of the March 14, 2003, land determination without regard to the Proposed Site's failure to qualify as "restored lands" under IGRA, plaintiff is entitled to a declaratory judgment that the NIGC approval was unlawful and is of no force or effect.

## COUNT III
### (Mandatory Injunction – Revocation of NIGC Approval)

53.     Plaintiff realleges and incorporates by reference paragraphs 1-45, 47-48 and 51 above.

54.     Congress authorized Class III gaming only on lands qualifying for gaming under IGRA, so the NIGC approval of the Amended Ordinance is lawful only if the Proposed Site satisfies the requirements for "restored land" status under IGRA Section 20(b)(1)(B)(iii).

55.     Because the land comprising the Proposed Site is not land which qualifies as "restored lands" under IGRA Section 20(b)(1)(B)(iii), the NIGC's approval of the Amended Ordinance was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, beyond the scope of the NIGC's authority under IGRA, and issued

11

in a manner not in accordance with law.

56. The Class III Indian casino project allowed by the NIGC's approval of the Amended Ordinance would cause the County to suffer irreparable harm for which there is no adequate remedy at law.

57. Plaintiff is entitled to a mandatory injunction directing the defendants to revoke and vacate the NIGC's approval of the Amended Ordinance.

## COUNT IV
### (Declaratory Judgment – Trust Acceptance Void *Ab Initio*)

58. Plaintiff realleges and incorporates by reference paragraphs 1-45 above.

59. The Assistant Secretary approved the Mechoopda Tribe's application to have the Proposed Site accepted into trust for gaming as "restored land" under IGRA Section 20(b)(1)(B)(iii) in a decision dated March 14, 2008, which was published in the Federal Register, Vol. 73, No. 90, on May 8, 2008.

60. The Proposed Site is not "restored land" for the Mechoopda Tribe and does not qualify for gaming under IGRA because it is not land which the Tribe ever occupied or owned as a tribe.

61. Because the Assistant Secretary's acceptance into trust for gaming of the Proposed Site purports to approve gaming at a site within Butte County which does not qualify for gaming under IGRA Section 20(b)(1)(B)(iii), plaintiff is entitled to a declaratory judgment that the Assistant Secretary's acceptance into trust of the Proposed Site is void *ab initio*.

## COUNT V
### (Declaratory Judgment – Requisite "Indian lands" Determination")

62. Plaintiff realleges and incorporates by reference paragraphs 1-45 and 59-

60 above.

63. The Assistant Secretary approved the trust application on the basis of the March 14, 2003, land determination rendered by the NIGC's Acting General Counsel, although the land determination failed to reconcile its conclusions with the facts of the Tribe's history which directly contradict the facts required for "restored land" status under IGRA.

64. Because the Assistant Secretary's acceptance of the Proposed Site into trust was made on the basis of the March 14, 2003, land determination without regard to the Proposed Site's failure to qualify as "restored lands" under IGRA, plaintiff is entitled to a declaratory judgment that trust acceptance was unlawful and is of no force or effect.

## COUNT VI
### (Mandatory Injunction – Revocation of Trust Acceptance)

65. Plaintiff realleges and incorporates by reference paragraphs 1-45, 59-60 and 63 above.

66. Congress authorized Class III gaming only on lands qualifying for gaming under IGRA, so the Assistant Secretary's acceptance of the Proposed Site into trust for gaming by the Mechoopda Tribe is lawful only if the Proposed Site satisfies the requirements for "restored land" status under IGRA Section 20(b)(1)(B)(iii).

67. Because the land comprising the Proposed Site is not land which qualifies as "restored lands" under IGRA Section 20(b)(1)(B)(iii), the Assistant Secretary's acceptance of the Proposed Site into trust for gaming was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, beyond the scope of the Assistant Secretary's authority under IGRA, and issued in a manner not in accordance with law.

68. The Class III Indian casino project allowed by the Assistant Secretary's

13

acceptance of the Proposed Site into trust for gaming by the Mechoopda Tribe would cause the County to suffer irreparable harm for which there is no adequate remedy at law.

69.     Plaintiff is entitled to a mandatory injunction directing the defendants to revoke and vacate the Assistant Secretary's acceptance of the Proposed Site into trust for gaming.

## COUNT VII
### (Prohibitory Injunction – "Indian lands" Requirement)

70.     Plaintiff realleges and incorporates by reference paragraphs 1-45, 47-48, 51, 54-56, 59-60, 63 and 66-68 above.

71.     Congress authorized Class III gaming activities only on "Indian lands" which qualify for gaming under IGRA.

72.     Because the land comprising the Proposed Site does not qualify for gaming under IGRA, any action by the NIGC or Interior which would allow the Tribe to conduct Class III gaming on the Proposed Site would be arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, beyond the scope of the NIGC's and Interior's authority under IGRA, and not in accordance with law.

73.     Any NIGC or Interior authorization of an illegal Class III Indian casino within Butte County, through tribal gaming ordinance approval or acceptance of land into trust for gaming or otherwise, will cause the County to suffer irreparable harm for which there is no adequate remedy at law.

74.     Plaintiff is entitled to a prohibitory injunction prohibiting the defendants from authorizing or santioning Class III gaming activities on the Proposed Site.

## COUNT VIII
### (Declaratory Judgment – No Historic Tribal Presence)

14

75. Plaintiff realleges and incorporates by reference paragraphs 1-45, 47-48, 51, 54-56, 59-60, 63, 66-68 and 72-73 above.

76. IGRA requires that gaming can only be conducted by the Tribe on the Proposed Site if it qualifies for gaming under IGRA.

77. There was no historic tribe at the Bidwell Ranch or Chico Rancheria and the only land occupied or owned in common by the ancestors of the current Mechoopda tribal membership and the Tribe as it today is constituted was the Bidwell Ranch or Chico Rancheria.

78. Because there was no land commonly occupied by the ancestors of the current Mechoopda tribal membership or the Tribe other than the Bidwell Ranch or Chico Rancheria, neither the NIGC nor Interior can authorize gaming on "restored lands" for the Tribe other than the former Bidwell Ranch or Chico Rancheria.

79. Because the NIGC's approval of the Amended Ordinance was made without regard to the fact that the Proposed Site was never owned or occupied by the ancestors of the current Mechoopda tribal membership or the Tribe, plaintiff is entitled to a declaratory judgment that the approval was unlawful and is of no force or effect.

80. Because the Assistant Secretary's acceptance of the Proposed Site into trust was made without regard to the fact that the Proposed Site was never owned or occupied by the ancestors of the current Mechoopda tribal membership or the Tribe, plaintiff is entitled to a declaratory judgment that the trust acceptance was unlawful and is of no force or effect.

**COUNT IX**
**(Prohibitory Injunction – Revocation of NIGC Approval)**

15

81.     Plaintiff realleges and incorporates by reference paragraphs 1-45, 47-48, 51, 54-56, 59-60, 63, 66-68, 72-73 and 76-78 above.

82.     Congress authorized Class III gaming activities only on "Indian lands" as defined by IGRA.

83.     Because the lands comprising the Proposed Site are not "restored lands" as defined by IGRA, any action by the NIGC which would allow the Tribe to conduct Class III gaming on the Proposed Site as "restored land" would be arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, beyond the scope of the NIGC's authority under IGRA, and not in accordance with law.

84.     The NIGC's authorization of an illegal Class III Indian casino within Butte County will cause the County to suffer irreparable harm for which there is no adequate remedy at law.

85.     Plaintiff is entitled to a prohibitory injunction prohibiting NIGC Chairman Hogen, NIGC Commissioner DesRosiers and the NIGC from authorizing or sanctioning the conduct of Class III gaming activities by the Mechoopda Tribe on the Proposed Site.

## COUNT X
### (Prohibitory Injunction – Revocation of Interior's Trust Acceptance)

86.     Plaintiff realleges and incorporates by reference paragraphs 1-45, 47-48, 51, 54-56, 59-60, 63, 66-68, 72-73 and 76-78 above.

87.     Congress authorized Class III gaming activities only on "Indian lands" as defined by IGRA.

88.     Because the lands comprising the Proposed Site are not "restored lands" as defined by IGRA, any action by Interior or the Assistant Secretary which would allow the Mechoopda Tribe to conduct Class III gaming on the Proposed Site as "restored land"

would be arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, beyond the scope of Interior's or the Assistant Secretary's authority under IGRA, and not in accordance with law.

89. The Assistant Secretary's acceptance of the Proposed Site into trust for gaming and the resulting development and the operation of what would be an illegal Class III Indian casino within Butte County will cause the County to suffer irreparable harm for which there is no adequate remedy at law.

90. Plaintiff is entitled to a prohibitory injunction prohibiting Secretary Kempthorne, the Assistant Secretary of Interior and Interior from authorizing or sanctioning the conduct of Class II or Class III gaming activities on the Proposed Site by the Mechoopda Tribe.

**REQUESTED RELIEF**

**WHEREFORE,** plaintiff respectfully requests that the Court enter an order as follows:

A. Declaring that because the Amended Ordinance purports to approve gaming at a site within Butte County which does not legally qualify for gaming, the NIGC's approval of the Amended Ordinance is void *ab initio*.

B. Declaring that because the NIGC's approval of the Amended Ordinance was made without regard to the Proposed Site's failure to qualify as "restored lands" under IGRA, the approval was unlawful and is of no force or effect.

C. Directing Chairman Hogen, NIGC Commissioner DesRosiers and the NIGC to revoke and vacate the NIGC's approval of the Amended Ordinance.

D. Enjoining Chairman Hogen, NIGC Commissioner DesRosiers and

the NIGC from authorizing or sanctioning the conduct of Class III gaming activities on the Proposed Site.

  E. Declaring that because the NIGC's approval of the Amended Ordinance was made in derogation of the fact that the Proposed Site was never owned or occupied by the predecessor group to the current Mechoopda Tribe, that approval was unlawful and is of no force or effect.

  F. Declaring that because the acceptance into trust of the Proposed Site for gaming for the Mechoopda Tribe purports to approve gaming at a site within Butte County which does not legally qualify for gaming, the Assistant Secretary's acceptance of the lanmd into trust for gaming is void *ab initio*.

  G. Declaring that because the Assistant Secretary's acceptance into trust of the Proposes Site for gaming by the Mechoopda Tribe was made without regard to the Proposed Site's failure to qualify as "restored lands" under IGRA, the approval was unlawful and is of no force or effect.

  H. Directing Secretary Kempthorne, the Assistant Secretary and Interior to revoke and vacate the acceptance into trust for gaming of the Proposed Site.

  I. Enjoining Secretary Kempthorne, the Assistant Secretary and Interior from authorizing or sanctioning the conduct of Class II or Class III gaming activities for the Mechoopda Tribe on the Proposed Site.

  J. Declaring that because the Assistant Secretary's acceptance into trust of the Proposed Site for gaming by the Mechoopda Tribe was made in derogation of the fact that the Proposed Site was never owned or occupied by the predecessor group to the current Mechoopda Tribe, that approval was unlawful and is of no force or effect.

K. Enjoining the defendants from authorizing or sanctioning the conduct of Class II or Class III gaming activities on the Proposed Site.

L. Awarding plaintiff its costs, attorneys' fees, and all other expenses of this litigation.

M. Awarding plaintiff such other and further relief as the Court deems just and proper.

**DATED** this 19th day of May 2008.

**BUTTE COUNTY, CALIFORNIA**

By Counsel

_____s_____
Dennis J. Whittlesey  (D.C. Bar No. 053322)
DICKINSON WRIGHT PLLC
1901 L Street, N.W. - Suite 800
Washington, D.C.  20036
Telephone: (202) 659-6928
Facsimile: (202) 659-1559

**OF COUNSEL:**

Bruce S. Alpert, Esquire
County Counsel
COUNTY OF BUTTE
25 County Center Drive
Oroville, California  95965

Scott R. Knapp, Esquire
DICKINSON WRIGHT PLLC
215 South Washington Square – Suite 200
Lansing, Michigan  48933

H. Scott Althouse, Esquire
DICKINSON WRIGHT PLLC
1901 L Street, N.W. - Suite 800
Washington, D.C.  20036

DC 35614-1 120433v1

19