# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BUTTE COUNTY, CALIFORNIA, 25 County Center Drive, Oroville, CA 95965, <br><br> Plaintiff, <br><br> v. <br><br> PHILIP N. HOGEN, in his official capacity as CHAIRMAN OF THE NATIONAL INDIAN GAMING COMMISSION, 1441 L Street, N.W., Suite 9100, Washington, D.C. 20005, and NORMAN H. DESROSIERS, in his official capacity as COMMISSIONER OF THE NATIONAL INDIAN GAMING COMMISSION, 1441 L Street, Suite 9100, Washington, D.C. 20005, <br><br> Defendants. <br><br> MECHOOPDA INDIAN TRIBE OF CHICO RANCHERIA, CALIFORNIA, a federally recognized Indian Tribe, c/o Dennis E. Ramirez, Chairman, Tribal Offices, 125 Mission Ranch Boulevard, Chico, CA 95926, <br><br> Intervenor. | Case No.: 1:08-cv-00519-HHK-AK <br> Judge: Henry H. Kennedy, Jr. <br> Deck Type: Administrative Agency Review <br> Date Filed: 03/26/08 <br><br> **REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE** <br><br> **ORAL ARGUMENT REQUESTED** |

**I.     INTRODUCTION**

In opposing the Motion to Intervene filed by the Mechoopda Tribe of Chico, California ("Tribe"), Plaintiff Butte County ("County") gives this Court no reason to conclude the Tribe should not be allowed to permissively intervene. To the contrary, the County's opposition brief effectively concedes the Tribe has met the standards governing permissive intervention, by advancing arguments and citing case law having nothing to do with the right of parties to permissively intervene under Rule 24(b), the basis upon which the Tribe's motion rests. Specifically, the County does not argue the Tribe's motion to intervene is untimely or that it will in any way delay adjudication or prejudice the parties — the standards governing whether a court should allow a party to permissively intervene in a particular case so as to protect its interests. *See* Fed. R. Civ. Pro. 24(b). Instead, the County defeats arguments never made, cites inapposite case law, and argues without any basis that the Tribe seeks to go beyond the scope of the administrative record underlying the federal approvals that the County challenges.

However, as the Tribe's moving papers show, the Tribe seeks to raise no new claims or issues. Rather, it wants merely to defend against claims that, if granted, would reverse federal approvals in which the Tribe possesses a direct and momentous stake. Nor does the Tribe seek to defend against the County's claims with facts outside the administrative record. To the contrary, the Tribe hopes to protect its interests based on the record upon which the agencies relied (a record that has yet to be compiled and certified). Accordingly, under the standards of Rule 24(b), the Tribe's motion to intervene should be granted: It is timely and the Tribe's participation will neither delay adjudication nor prejudice the parties. The Tribe's participation also will allow for meaningful resolution of claims in which the Tribe possesses a vital interest and about which its intimate knowledge can assist in sorting through the complex administrative record.

Finally, allowing the Tribe's intervention is entirely consistent with the decisions of other courts in this Circuit and elsewhere. It is also consistent with the direction of the United States Supreme Court, which has held — in a case the Tribe cited and that the County ignores — that an Indian tribe's "participation in litigation critical to [its] welfare should not be discouraged." *Arizona v. California*, 460 U.S. 605, 615 (1983). This litigation is indisputably "critical to [the Mechoopda Tribe's] welfare." It should be allowed to intervene and participate.

## II. ARGUMENT[1]

### A. The County Nowhere Argues That The Tribe's Motion Is Untimely, That It Seeks To Raise New or Different Claims, Or That Its Intervention Would "Unduly Delay Or Prejudice The Adjudication."

In asking the Court to reject the Tribe's permissive intervention, the County virtually ignores the relevant standards in Rule 24(b), which "should be liberally construed with all doubts resolved in favor of the proposed intervenor." *State of South Dakota v. United States Department of Interior*, 317 F. 3d 783, 785 (8th Cir. 2003), citing *Turn Key Gaming, Inc. v.*

---

[1] Oddly, the County argues "the Tribe's Motion does not directly address the issues presented in the First Amended Complaint." (Opp. at 2.) Of course, as the County knows, the Tribe moved to intervene *before* the County amended its pleading, meaning it could not have addressed the County's First Amended Complaint in its motion. (The County filed suit on March 26, 2008, the Tribe moved to intervene less than two months later, on May 13, 2008, and the County amended its Complaint about a week later, on May 19, 2008.) The fact that the Tribe's motion to intervene predates the County's amended pleading necessarily precludes a potential argument that the Tribe's requested intervention is untimely.

Furthermore, as the County apparently concedes, the County's amendment of the complaint does not render the Tribe's motion to intervene deficient or moot. *See* Opp. at 2 (although motion to intervene does not address the First Amended Complaint, the County's "opposition is relevant to all of the tribal claims"). In fact, the County's amendment only further supports the Tribe's motion. The County added claims against officials of another federal agency, the Bureau of Indian Affairs, in connection with a decision to take the particular site about which the County complains into trust as "restored lands" under the Indian Gaming Regulatory Act. (Amended Complaint, ¶ 2.) The BIA's decision followed the "restored lands" determination of the National Indian Gaming Commission, and the facts and legal issues involving both decisions overlap. (*Id*., ¶¶ 24-25.) The Tribe has a direct and vital stake in both approvals, it timely seeks to defend those approvals in the face of the County's challenge, and its intimate knowledge of the facts underlying both approvals can assist in sorting through the administrative record.

*Oglala Sioux Tribe*, 164 F. 3d 1080, 1081 (8th Cir. 1999); *see also Leboeuf, Lamb, Greene, & Macrae, L.L.P. v. Abraham*, 205 F.R.D. 13, 18 (D.D.C. 2001) ("courts in this circuit generally take a liberal approach to intervention); *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25068, at *29 (D.D.C. 2001) ("requirements for permissive intervention are to be construed liberally, 'with all doubts resolved in favor of permitting intervention'" (citation omitted)). Specifically, when deciding whether to allow permissive intervention under Rule 24(b), courts should consider whether the motion is timely, whether the putative intervenor's claims or defenses would share common questions of law or fact with the main action, and whether intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. Pro. 24(b); *see also United States v. Pitney Bowes, Inc.*, 25 F. 3d 66, 74 (2d Cir. 1994) (undue delay and prejudice are the "principal guide" in determining whether permissive intervention should be allowed, and "timeliness" is "a threshold consideration under Rule 24(b)")); *Me-Wuk Indian Cmty. v. Kempthorne*, 246 F.R.D. 315, 319 (D.D.C. 2007) (permissive intervention analysis is based upon timeliness, common questions of law or fact and a finding of no undue delay or prejudice).

    The County fails to address these specific factors. It nowhere argues the Tribe's motion is untimely, or that its intervention would unduly delay or prejudice adjudication. While the County suggests (without basis) that the Tribe seeks to present facts outside the scope of the administrative record (it does not), the County nowhere argues the Tribe's defense would not share common questions of law or fact with those presented in the main action. Instead, the County raises false arguments which it then purports to defeat. However, as shown below, the County's arguments are misplaced and irrelevant, and the Tribe, having met the standards governing permissive intervention, should be allowed to intervene.

### B.     Federal Subject Matter Jurisdiction Exists To Support The Tribe's Defense Of Federal Claims Brought Under The Administrative Procedures Act.

Without a single citation to the Tribe's moving papers, the County argues "the Tribe is asking this Court to allow its intervention specifically to litigate issues not within [its Administrative Procedures Act] jurisdiction." (Plaintiff's Opposition to Motion for Leave to Intervene Under Federal Rule 24(b) ("Opp."), at 2.) That is not true, and the Tribe has nowhere stated or suggested that it would raise issues unrelated to the County's challenge under the Administrative Procedures Act. To the contrary, as its moving papers make clear, the Tribe seeks only to defend against federal claims brought by the County under that Act — claims that seek to reverse the federal approvals the Tribe secured and for which federal jurisdiction obviously exists. (*See* Statement of Points and Authorities In Support of Motion of Mechoopda Indian Tribe of Chico Rancheria, California To Intervene Under Federal rule of Civil Procedure 24 ("Open. Brf") at 10.)

Accordingly, the County's reliance on *EEOC v. National Children's Center,* 146 F. 3d 1042 (D.C. Cir. 1998), is misplaced. In *EEOC*, the Court noted that federal subject matter jurisdiction must exist for permissive intervention, reasoning that "requiring an independent basis for jurisdiction makes sense in cases involving permissive intervention, because *the typical movant* asks the district court to adjudicate an additional claim on the merits." *EEOC*, 146 F.3d at 1046 (emphasis added). The point of *EEOC* was that, unlike intervention under Rule 24(a), where "courts granted intervention as of right without requiring an independent jurisdictional basis, on the theory that such claims were within the ancillary jurisdiction of the district courts," such is not allowed for permissive intervention: "No less than the original claimants, a third party who seeks to intervene in a federal action and litigate a claim on the merits must demonstrate that the claim falls within the court's limited jurisdiction." *Id.*, at 1046-47.

Here, of course, the Tribe is not asking the Court to adjudicate any "additional claim on the merits" (146 F. 3d at 1046), but rather, it seeks only to defend against the County's claims, which already "fall within the court's limited jurisdiction." *Id.*, 1046-47.  As the County alleges in its own complaint (as originally filed and as amended), federal subject matter jurisdiction exists to support the claims against which the Tribe seeks to defend as an intervenor.  *See* Complaint ¶ 6; Amended Complaint ¶ 10.  And indeed, there exists ample precedent in this Circuit and elsewhere for allowing Indian tribes to permissively intervene and defend against challenges to federal agency approvals that inure to their benefit.  *See* Open. Brf at 9; *see also Arizona v. California*, 460 U.S. 605, 615 (1983).[2]

### C. Contrary To The County's Bare Assertions, The Tribe Seeks To Present No Facts Outside The Administrative Record.

The County also argues — again without basis — that the Tribe will raise facts outside the scope of the administrative record upon which the federal agency officials relied when issuing the challenged approvals.  (Opp. at 2-3, 4-5).  Although the County nowhere squarely states as much, the argument is apparently designed to suggest the Tribe's defense to the County's claims will not share "a common question of law or fact" with the main action, as required by Rule 24(b).  The County's argument is false, resting on nothing but conjecture.

---

[2]  The County's argument also erroneously conflates standing to sue with federal subject matter jurisdiction.  (Opp. at 3.)  While both are jurisdictional prerequisites to suit, they are distinct concepts.  *See Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007) (standing and subject matter jurisdiction are separate jurisdictional requirements, and where the court finds one lacking it may dismiss without reaching the other).  Moreover, it cannot be seriously argued that the Tribe lacks standing here, where the County seeks to reverse federal approvals directly affecting the Tribe's economic future and its members' health and welfare.  *See Sabre, Inc. v. DOT*, 429 F.3d 1113, 1117 (D.C. Cir. 2005) (standing demonstrated by impact of challenged rule on plaintiff's ability to make business decisions); *Clark County v. FAA*, 522 F.3d 437 (D.C. Cir. 2008) (plaintiffs demonstrate standing because challenged decision would cause an injury to plaintiffs that is redressible by judicial relief).

For example, the County contends the Tribe will raise issues "not properly before the court" because the Tribe seeks to provide "this Court with the interpretation of its history of restoration from its own unique perspective." (Opp. at 2; *and see id.*, at 4.) However, the facts surrounding the Tribe's history and requested approval action are necessarily contained in the administrative record that was before the agencies when they made the decision the County challenges. That history is central to the case, which explains why Plaintiff dedicates much of its Complaint to *its* version of the Tribe's history. (*See* Complaint, ¶¶ 22-40; Amended Complaint, ¶¶ 26-44.) In fact, the County relies upon its version of the Tribe's history to make its central arguments — that the National Indian Gaming Commission erred when concluding the site on which the Tribe seeks to construct and operate a gaming facility constitutes "restored lands" under the Indian Gaming Regulatory Act, and that the Bureau of Indian Affairs thereafter erred when approving the Tribe's request to take the site into trust as "restored lands." (Complaint, ¶¶42-68; Amended Complaint, ¶ 46-90.) Given the County's focus on the Tribe's history throughout its Complaint, as originally filed and as amended, it is only natural that the Tribe also would want and need to address that history, including its legal significance. The Tribe should be allowed to do so, with reference to facts contained within the administrative record, just as the County seeks to do, to the detriment of the Tribe.

In a throw-away argument relegated to a footnote, the County argues the Tribe's intervention would "impermissibly broaden the scope of the current litigation." (Opp. at 4 n.4.) However, it nowhere explains how allowing the Tribe to defend against the County's challenge would broaden the litigation. In truth, the Tribe seeks to proceed on the same administrative record as the County and Federal Defendants. The fact that the Tribe may possess a different interpretation of the facts in that record — not to mention, attach different legal significance to such facts — would not broaden the scope of the litigation at all, but rather, lead to its

meaningful resolution. S*ee United States v. American Bar Association*, 118 F. 3d 776, 782 (D.C. Cir. 1997) (advantage of permissive intervention is that "increased information" could "reduce the risk of error"); *United States Postal Service v. National Association of Letter Carriers*, 579 F. 2d 188 (2d Cir. 1978) (factor relevant to permissive intervention includes whether party will contribute to " 'full development of underlying factual issues in the suit and to the just and equitable adjudication of the legal issues presented' " (citation omitted)).[3]

### D. The County's Argument That The Tribe Should Not Be Allowed To Participate Because Its Interests Are Already Represented Lacks Basis.

#### 1. The Tribe Seeks Permissive Intervention, Not Joinder of Parties.

The County contends the Court should not allow the Tribe to permissively intervene on the theory that the Federal Defendants can adequately represent the Tribe. However, the cases upon which the County relies to support this argument are inapposite. Specifically, the County relies upon cases that concern whether a tribe is an "indispensable" party to litigation under Fed. R. Civ. P. 19, not whether a tribe may permissively intervene under Fed. R. Civ. P. 24(b). *See Southwest Center for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153 (9th Cir. 1998) (district court abused its discretion in dismissing plaintiff's claim based upon plaintiff's failure to join tribe under Rule 19 because the tribe is not a necessary party); *Blumenthal v. Babbitt*, 899 F.Supp. 80, 82-83 (D. Conn. 1995) (denying motion to dismiss based upon plaintiff's failure to join a tribe as an indispensable party under Rule 19); *Artichoke Joe's v. Norton*, 216 F.Supp.2d 1084, 1118-19 (E.D. Cal. 2002) (same effect). The considerations involved in deciding whether a party is necessary and indispensable under Rule 19 are different than those regarding permissive intervention under Rule 24(b). The cases cited by Plaintiff are thus inapposite and irrelevant.

---

[3] The United States, which defends this suit on behalf of the Federal Defendants, does not oppose permissive intervention by the Tribe. (*See* Open. Brf at 2 n. 2.)

### 2. Adequate Representation Is Not A Requirement Under Rule 24(b).

The Tribe seeks to intervene permissively, not as a matter of right. Adequacy of representation is a requirement of Rule 24(a) (intervention of right), but not Rule 24(b) (permissive intervention). Despite this, the County suggests the Court should deny the Tribe's Motion on the ground that the Tribe's interests are assertedly "adequately represented by the federal defendants…" (Opp. at 7.)

The main case upon which the County relies for this argument — *South Dakota v. United States Department of the Interior,* 317 F.3d 783 (8th Cir. 2003) — offers scant support. In *South Dakota*, the issue was whether the court abused its discretion by denying permissive intervention because other parties to the litigation would adequately represent the interests of the putative intervenor. Noting that "[r]eversal of a decision denying permissive intervention is extremely rare," the Eighth Circuit held that the lower court did not abuse its discretion by considering adequacy of representation. 317 F.3d at 787. However, as the Eighth Circuit also explained, whether a putative intervenor's interests would be adequately represented in its absence "is only a minor variable in the Rule 24(b) decision calculus." *Id.* The Court went on to note that the putative intervenor had cited precedent that "probably would have persuaded [the court] to grant the motion if [it] were the district court ruling on the motion in the first instance." *Id.* Notably, the precedent the Eighth Circuit found persuasive on the issue of whether an Indian tribe should be allowed to permissively intervene to protect its interests — *Arizona v. California, supra* — is United States Supreme Court precedent that the Tribe cited in its moving papers and that the County nonetheless ignores in its opposition. (*See* Open. Brf at 11-12.)

Notably, the Tribe's research efforts uncovered no decisions in which the courts in this Circuit have relied upon adequacy of representation when deciding whether to allow a party with a stake in the outcome to permissively intervene. Presumably, if such case law existed, the

County would have cited it. *Compare EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046-48 (D.C. Cir. 1998) (adequacy of representation not considered by court in permissive intervention analysis); *Appleton v. FDA*, 310 F. Supp. 2d 194, 196-97 (D.D.C. 2004) (same); *Mass. Sch. Law at Andover, Inc. v. U.S.*, 118 F.3d 776, 782 (D.C. Cir. 1997) (same). In sum, adequacy of representation is not a requirement of Rule 24(b), and not a factor the courts of this Circuit have embraced when deciding whether to allow a party to permissively intervene.

### 3.    Only The Tribe Can Best Represent Its Sovereign Interests.

Finally, even assuming the adequacy of the Tribe's representation was somehow relevant to this Court's decision (even as a "minor variable" in the "decision calculus"), the Tribe respectfully submits that only it can fully represent its vital and sovereign interests that are at stake here. While the County argues this case has nothing to do with the Tribe's sovereignty, the first paragraph of its pleading belies that assertion. The Tribe's right and ability to secure "restored lands" on which to operate a gaming facility, consistent with IGRA's purpose of strengthening tribal governments through economic self-sufficiency and independence, is directly related to the Tribe's sovereignty. An attack on the federal approvals the Tribe needs to achieve IGRA's purpose of political and economic independence is necessarily an attack on that sovereignty. This case is the culmination of a 22-year long effort to restore not only the Tribe's sovereign status, but its sovereign lands. This is a history with respect to which the Tribe, above all others, is most familiar. Although the Federal Defendants are represented by skilled legal counsel who are no doubt mindful of the Tribe's interests, the nature of the action is such that the Federal Defendants cannot represent the Tribe's sovereign interests as fully and effectively as the Tribe, any more than the Tribe could fully represent the sovereign interests of the United States.[4]

---

[4]    The County argues that it is challenging the Tribe's "right to use a single parcel of land for gaming." (Opp. at 6.) However, other than an almond orchard and a cemetery, this "single parcel" is the sole land in which the Tribe holds an interest. The Tribe has had no land in trust

**VI.     Conclusion**

Consistent with the Supreme Court's direction that an Indian tribe's "participation in litigation critical to [its] welfare should not be discouraged," this Could should allow the Mechoopda Tribe to participate in this litigation and defend against challenges to federal approvals in which it possesses a direct and vital stake.  The Tribe's request to permissively intervene is timely.  Its participation will not delay or prejudice adjudication, but rather, facilitate a meaningful resolution.  As such, the Tribe respectfully asks the Court to permit its intervention.

Dated:  June 2, 2008

|  | Respectfully submitted, |
|---|---|
|  | Mechoopda Indian Tribe of Chico Rancheria, California, Intervenor-Defendant, |
|  | By _____/s/_____ |
| Michael J. Anderson, DC Bar 417887 | Nicholas C. Yost, USDC-DC Bar No. 968289 |
| Anderson Tuell LLP | Paula M. Yost, CA Bar 156843 |
| 300 Independence Avenue, SE | Katherine K. Moore, CA Bar 235958 |
| Suite 200 | Sonnenschein Nath & Rosenthal LLP |
| Washington, D.C. 20003 | 525 Market Street |
| Telephone: (202) 543-5000 | 26th Floor |
| Facsimile:  (202) 543-7716 | San Francisco, CA  94105-2708 |
|  | Telephone: (415) 882-5000 |
|  | Facsimile:  (415) 882-0300 |

Christina Kazhe, CA Bar 192158
Kazhe Law Group P.C.
8359 Elk Grove Florin Road
Suite 103287
Sacramento, CA 95829
Telephone:  (916) 226-2590
Facsimile:   (916) 880-5691

---

on which to pursue economic development since the United States purported to terminate the sovereign status of the Tribe and its land, under the Rancheria Act, in 1967.  Since reinstatement of its federally-recognized sovereign status in 1992, the Tribe has sought to have land placed into trust for the purpose of establishing a seat of tribal government.  This "single parcel," which the Tribe acquired in 2001, is that land.  The property in question is thus not one of many potential locations on which the Tribe may establish a reservation and pursue self-sufficiency, but rather, the only location.

## CERTIFICATE OF SERVICE

I certify that on June 2, 2008, I electronically filed the above document with the Clerk of the District Court using its CM/ECF system, which will send notice of electronic filing to the following:

> Dennis Jeffrey Whittlesey
> DICKINSON WRIGHT, P.L.L.C.
> 1901 L Street, NW
> Suite 800
> Washington, DC  20036
> Tele:  (202) 659-6928
> Fax:  (202) 659-1559
> dwhittlesey@dicksinsonwright.com
>
> Amy S. Tyron
> U.S. DEPARTMENT OF JUSTICE
> P.O. Box 44378
> Washington, DC  20026-4378
> Tele:  (202) 353-8596
> amy.tryon@usdoj.gov

          /s/ Kimberly J. Soto
          Kimberly J. Soto