IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BUTTE COUNTY, CALIFORNIA ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PHILIP N. HOGEN, et al., ) <br> ) <br> Defendants. ) <br> ) | No. 1:08-cv-00519-HHK |

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S ORDER
GRANTING INTERVENTION TO MECHOOPDA TRIBE**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and LCvR 72.2(a) of the Rules of this Court, Plaintiff Butte County respectfully submits these Objections to the Order and Memorandum Opinion of Magistrate Kay entered herein on June 16, 2008, granting permissive intervention to the Mechoopda Indian Tribe of the Chico Rancheria ("Tribe").

These Objections are timely filed.

**INTRODUCTION**

Butte County understands and respects the notion that permissive intervention under Rule 24(b) is purely discretionary with the Court. And the County understands and respects the deference which generally would be afforded a Magistrate's decision in such matters by this Court under ordinary circumstances.

However, this case is not ordinary and the Magistrate clearly did not understand the underlying circumstances. Such misunderstanding is not the fault of either this Court

or the Magistrate, but rather the direct product of a tribal effort to promote the notion that this case controls its future economic development when in fact it is limited to whether a a single parcel of land meets legal standards for Indian gaming. There will be no permanent impact on the Tribe from a determination that the land cannot be utilized for gaming for the reason that there is no restriction on the acreage or number of parcels which this Tribe can acquire and use for economic development. Thus, the ultimate outcome of this litigation in no way affects the Tribe's future ability to pursue economic development projects, including gaming. It only affects the Tribe's right to conduct gaming on a single parcel of land.

A.  **The Magistrate Erred in Failing to Consider Whether the Federal Defendants Adequately Represent the Tribe's Interests.**

There are distinct categories of Indian law litigation in which the courts have considered intervention of non-parties challenging the adequacy of the federal representation of their interests.

One category concerns litigation contesting tribal rights to which the United States is a party and purporting to represent multiple tribes in a single case in which intervention is considered appropriate, such as the long-running water rights litigation in *Arizona v. California,* 460 U.S. 605, 615 (1983) (cited at Memorandum Opinion, p.3, fn. 2) (granting intervention by the Colorado River Indian Tribes because the Court found the Secretary could not adequately represent the interests of multiple tribes in a single water rights case in which each tribe had unique interests and distinct claims which were not necessarily consistent with those of other tribal parties).

In direct contrast is a second category of litigation seeking judicial review of administrative decisions by federal officials affecting a single tribe in which intervention

is routinely rejected because the putative intervenors' interests are adequately represented by the federal defendants, such as *South Dakota ex. rel. Barnett v. Dept. of Interior,* 317 F.3d 783, 787 (8th Cir. 2003) (cited at Memorandum Opinion, p.3, fn. 2) (affirming District Court denial of tribal intervention in litigation challenging acceptance of land into trust because tribal interests in trust acceptance cases under the Administrative Procedure Act, 5 U.S.C. § § 701-706 ("APA") are adequately represented by the Department of the Interior), and S*eminole Nation of Oklahoma v. Norton, et al.,* 206 F.R.D. 1 (D.D.C. 2001) (denying intervention by Seminole Freedmen in litigation challenging an administrative review and approval of tribal Constitutional amendments which threatened to directly and adversely affect the Freedmen's rights by excluding them from enrollment in the Seminole Nation).

The two categories need to be carefully assessed since they present different situations which, in turn, require analysis for one which is distinct from the analysis for the other. The Magistrate did not distinguish the two and applied general principles of law applicable to the first category while this case falls within the latter.

At the outset, the County would emphasize that this litigation is an APA challenge to (1) a decision by the National Indian Gaming Commission ("NIGC") to allow gaming on a parcel of land within Butte County and (2) a second decision by the Secretary of the Interior ("Interior") to accept that same land parcel into trust for gaming pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.* ("IGRA"). At the heart of this dispute is Butte County's contention that the specific land parcel at issue does not meet the statutory requirements for gaming under IGRA. Contrary to the Tribe's arguments, this case neither challenges tribal recognition or sovereignty nor the Tribe's right to

3

pursue any economic opportunity, including gaming. This challenge goes solely to the federal defendants' administrative determinations that the subject parcel – and only that parcel – satisfies the statutory requirements concerning land which is legally eligible for gaming under IGRA.

A critical issue which appropriately is examined in APA litigation involving Indian land decisions is whether in fact the putative intervenor's interests are adequately represented by the United States. Yet, the Magistrate cavalierly dismissed the question of adequacy of representation even while recognizing the Tribe's concession that the federal defendants "will vigorously defend against Plaintiff's claims." *See* Memorandum Opinion at p.3, fn.2. In so doing, he cited the ruling in *Dimond v. District of Columbia,* 792 F.2d 179, 192 (D.C. Cir. 1986), that intervention should be granted because there were large financial issues at stake in personal injury litigation, while ignoring that *Dimond* was not APA litigation. Rather, *Dimond* involved a Constitutional challenge to statutory limitations in the District of Columbia No Fault Insurance Act which would have exposed the intervening State Farm Insurance Company to enormous financial liability which was unforeseen at the time State Farm insurance policies were written. In that instance, the court concluded that the District of Columbia would not adequately represent the carrier's financial interests.

The instant case stands in stark contrast to *Dimond,* in that there is no direct threat to tribal finances. The only issue is whether a single parcel of land qualifies for Indian casino development under IGRA. The Magistrate seems to have accepted the irrelevant and incorrect assertions of the Tribe that its ability to pursue any economic development is permanently imperiled by this litigation:

> [T]he Court recognizes that the United States has, at most, a negligible financial interest in the outcome of this litigation whereas <u>the Tribe's goals of economic development and self-sufficiency are at stake</u>. (citing *Dimond*).

Memorandum Opinion, p.3, fn.2 (emphasis supplied). Unlike the intervenor State Farm Insurance in *Dimond*, the Tribe's financial future is neither at stake not at issue here. The subject parcel is not the only land upon which the Tribe can select for economic development – it just happens to be the first. Moreover, a ruling that this land does not qualify for gaming poses no threat to any tribal asset or even future financial returns the Tribe hopes to realize from economic development projects on numerous land parcels which the Tribe can acquire, whether those financial returns be realistic or merely speculative. The only question before this Court concerns Interior's decision to accept the subject land parcel into trust for gaming, and the Tribe affirmatively admits that the United States will "vigorously defend" against the County's claims. This concession confirms adequacy of representation for the only matter which can be reviewed by this Court, as was made clear in *Seminole Nation* in denying intervention. *See* 206 F.R.D. at 10:

> As this Court's review is constrained to the administrative record, the only potential for inadequacy in the representation of [Interior] is the risk that [Interior] will not vigorously defend itself against Plaintiff's APA claim.

While much of the discussion in *Seminole Nation* concerned denial of intervention of right under Rule 24(a), the Court also concluded that the "Freedmen fare no better in the context of permissive intervention" under Rule 24(b) because of their clear intent to broaden the scope of the litigation which "would delay the adjudication of the discrete issues presented to the Court by the original parties." 26 F.R.D. at 11. As is discussed

5

below, as did the Seminole Freedmen, the Mechoopda Tribe also has made clear its intentions to broaden the scope of this litigation by introducing issues concerning termination and restoration of federal status, as well as its efforts to pursue economic self sufficiency – matters outside the limited administrative decision presented by the County's lawsuit and, correspondingly, the Administrative Record to which this Court's review will be confined because such new matters are simply improper for the Court's consideration. *See, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419 (1971); *Seminole Nation, supra,* 206 F.R.D. at 6, 10.

In acknowledging that "[s]ome courts do consider adequacy of representation by existing parties in permissive intervention consideration," the Magistrate cited *South Dakota ex. Barnett v. Dept. of Interior, supra,* and *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (Memorandum Opinion, p.3, fn. 2). However, he quickly dismissed the notion with citation to *South Dakota* which observed that "adequacy of representation is only a minor variable in the Rule 24(b) decision calculus, it is not an illegitimate consideration." *Ibid.* (citing *U.S. Postal Serv. v. Brennan).* In this, however, he failed to note that the *South Dakota* court went further to observe that *Brennan* specifically acknowledged that "adequacy of representation is a relevant factor in permissive intervention analysis." And even that acknowledgment fails to fully recognize the *Brennan* court's discussion of factors relevant to permissive intervention:

> The principal consideration set forth in … Rule [24(b)] is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The court also will consider whether the applicant will benefit by intervention. … Other relevant factors "include the nature and extents of the intervenors' interests," whether their interests are "adequately represented by the other parties," and "whether parties seeking intervention will significantly

6

> contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions raised."

317 F. 3d at 191-92 (internal citation omitted).  As is discussed elsewhere in this document, the County respectfully proposes that the Tribe's participation will cause delay in this litigation and the Tribe's interests are concededly represented by the United States.  As for full development of the facts, the review goes to the Administrative Record and there are no extrinsic facts which should be allowed, despite the apparent intention of the Tribe to go beyond the record – the relevant and admissible facts will be before the Court, whether the Tribe is a party or not.

Finally, the Magistrate's reliance on *Arizona v. California, supra,* is misplaced.  Simply stated, the Supreme Court was dealing with one phase in major and long-running water rights adjudication in which the United States was representing multiple tribes including two with reservations adjoining the Colorado River south of Parker Dam – the Fort Mohave and Colorado River Reservations.  An issue affecting any determination of those two reservation tribes' water allocation entitlements concerned unresolved boundaries for each reservation, the resolution of which would directly affect their individual allocation awards and not all of the claims of the two tribes were compatible.  The United States proposed to accept recommendations of a Special Master resolving the boundary issues for the allocation calculations even though the tribes disagreed.  The significant permanent impacts on the tribes' water entitlements led the Court to recognize that Interior did not adequately represent their interests.  That situation is a far cry from the one before this Court.

B.  **The Magistrate Erred in Finding an Independent Ground for Subject Matter Jurisdiction.**

The Magistrate uses as his roadmap to determine intervention the case of *E.E.O.C. v. Nat'l Children's Center, Inc.,* 146 F.3d 1042, 1046 (D.C. Cir. 1998). That court observed that standing to sue is related to the issue of subject matter jurisdiction, and this requires meeting the criteria articulated by *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992): (1) an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent'"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'". However, he ignores any standing analysis despite uncertainty in this Circuit over whether standing is necessary for intervention as noted in *In re Vitamins Antitrust Litig.,* 215 F.3d 25, 31 (D.C. Cir. 2000), with what sounds like the apparent conclusion that future tribal economic development can only be realized at the subject site:

> Even if standing is required, the Tribe satisfies the three criteria set forth in *Lujan* because the Tribe demonstrated that its economic future will be negatively impacted if Butte County prevails in this suit <u>whereas it will be able to pursue economic development through Indian gaming if Defendants prevail</u>.

Memorandum Opinion, p.4, fn.3 (emphasis supplied).

There was nothing before the Magistrate to even suggest that the Tribe would be foreclosed from pursuing economic development, including gaming, at other locations if the subject parcel is determined to be land upon which the Tribe cannot lawfully conduct gaming under IGRA. Moreover, there is no identification of any legally protected tribal

8

interest which would be infringed by County success in this litigation beyond potential and speculative casino revenue which would come from a tribal casino regardless of location. The Tribe does have a legal right to conduct gaming on land which meets statutory and regulatory requirements. It will have that right without regard to the outcome of this litigation. Simply stated, there is no injury to the Tribe at stake here other, perhaps, than delay necessitated by its dogmatic insistence on pursing federal approvals for a site which has long been in controversy between the Tribe and the County. *See* First Amended Complaint, Preliminary Statement. If delay is incurred from an adverse decision in this Court, that result is something for which the Tribe bargained when it continued to press for gaming on a site which the County opposed for legitimate reasons. But delay is merely delay. It is not a loss of a legal right or opportunity to pursue gaming elsewhere.

In short, the Magistrate apparently believed that there was no other alternative for the Tribe than pursuing this site. The belief is wrong and so is the Magistrate's conclusion.

**C.   The Magistrate Erred in Finding that the Tribe Presented a Common Question of Law or Fact.**

The Magistrate concludes that the Tribe will raise "the same factual and legal issues that Defendants will likely raise in support of their decisions… ." (Memorandum Opinion, p.5)

The case will be decided on the basis of an Administrative Record, and whether the federal defendants acted illegally in their approvals on the basis of that Record. The facts and legal contentions are already fixed. There is nothing for the Tribe to raise beyond the matters already relied on by the decision makers, for this Court's review is

9

confined to the administrative record. See *Overton Park, supra,* 401 U.S. at 419; *Seminole Nation, supra,* 206 F.R.D. at 6.

The Tribe stated in its moving papers its intention to provide "this Court with the interpretation of [a] its history of restoration from its own unique perspective, and by vigorously opposing any further delay in the legal steps necessary for the Tribe to proceed with [b] its long-delayed plans for self-sufficiency and self-determination." Tribe's Statement of Points and Authorities in Support of [Motion to Intervene], p.3. These same issues are articulated in the Motion itself at Paragraphs 1, 5 and 6.

The federal decisions at issue concern neither (a) tribal restoration or (b) tribal self-sufficiency and self-determination. They only concern a single site's eligibility for gaming under IGRA. Thus the Tribe has stated an agenda to present issues outside the limited review even possible in APA litigation, which is whether the decision makers acted reasonably and legally. There is no allegation in the Complaint challenging either tribal restoration and recognition or the Tribe's right to pursue economic activities.

That the Tribe intends to expand this litigation to include matters outside the scope of the First Amended Complaint is confirmed by reviewing the attachments to the Memorandum of Points and Authorities in Support of the Motion to Intervene:

    1.    <u>Declaration of Dennis E. Ramirez</u> – The focus of this document is to tell the story of a tribal history of termination and restoration and current efforts to secure economic self-sufficiency. Implicit throughout the Declaration is the notion that the subject parcel of land is the only site on which the Tribe can pursue economic development. This is simply not true.

    2.    <u>Declaration of [Tribal Attorney] Nicholas C. Yost</u> – This document is

10

merely procedural and not relevant to the discussion.

3.   <u>Request for Judicial Notice</u> – This document seeks judicial notice of 13 documents, most of which deal with the same irrelevant issues of tribal termination and restoration and continuing efforts to secure economic self-sufficiency. They are as follows:

>   **A.**   The Mechoopda Restored Lands Opinion dated March 14, 2003. This will be part of the Administrative Records at both NIGC and Interior. It is an unnecessary addition to this Court's file.
>
>   **B.**   This is a *Federal Register* publication of recognized Indian tribes. The irrelevance of this inclusion is shown by the First Amended Complaint at ¶ 16 which affirmatively alleges that the Tribe is federally recognized. It is irrelevant and inadmissible.
>
>   **C.**   This consists of two federal laws: the California Rancheria Termination Act of 1958 and the Rancheria Distribution of Assets Act of 1964. There is no issue before this Court even remotely dealing with Termination of Rancheria status or the distribution of rancheria assets. It is irrelevant and inadmissible.
>
>   **D.**   *Federal Register* Notice of Termination of the Chico Rancheria. It is irrelevant and inadmissible.
>
>   **E.**   A copy of a Stipulated Judgment in federal court dealing with the federal government's failure to fully implement Termination. It is irrelevant and inadmissible.
>
>   **F.**   *Federal Register* Notice of recognition of the Tribe. It is irrelevant and inadmissible.
>
>   **G.**   Tribal Gaming Ordinance. This will be part of the Administrative Record at the NIGC. It is an unnecessary addition to this Court's file.
>
>   **H.**   Memorandum of Opinion between NIGC and Interior dated May 24, 2006, outlining the process for rendering land determination opinions submitted to the federal government subsequent to the date of execution. This document was prepared more than three years after the Mechoopda land determination was rendered by the NIGC. It ostensibly is beyond irrelevant, but the Tribe must have some long-range purpose in mind by its inclusion at this stage. However, to the extent it has even an arguable bearing on matters before this Court, it should be rejected as the kind of

"post hoc rationalization" which may not be considered. *Overton Park, supra,* 401 U.S. at 419. It is irrelevant and inadmissible.

**I.** Interior Request for Approval of Proposed Finding of No Significant Impact for Fee-to-Trust Application. This will be part of the Administrative Record at Interior. It is an unnecessary addition to this Court's file.

**J.** Tribal Amendment to Gaming Ordinance. This will be part of the Administrative Record at the NIGC. It is an unnecessary addition to this Court's file.

**K.** Proposed Finding of No Significant Impact for Fee-to-Trust Application. This will be part of the Administrative Record at Interior. It is an unnecessary addition to this Court's file.

**L.** Finding of No Significant Impact for Fee-to-Trust Application. This will be part of the Administrative Record at Interior. It is an unnecessary addition to this Court's file.

**M.** *Federal Register* Notice of acceptance of subject land into trust. This will be part of the Administrative Record at Interior. It is an unnecessary addition to this Court's file.

The focus of this litigation is established by the APA. The Tribe's statements and materials filed in support of its Motion make clear that it has a much broader agenda going far beyond the Magistrate's conclusion that the Tribe presents common questions of law or fact.

**D.  The Magistrate Erred in Finding that Intervention Would Not Cause Undue Delay or Prejudice.**

The Tribe's agenda speaks for itself in this regard. As the foregoing discussion at Section C demonstrates, there will be a continuing effort by the Tribe to expand the litigation into areas beyond the limited scope permitted under the APA. The Tribe says it has a story to tell, and the County respects both its story and right to tell it. But this is neither the forum in which it can do so nor the forum in which it should it be permitted to do so at the expense of the "rights of the original parties." Rule 24(b). Litigating

irrelevant sideshow issues definitely causes delay and additional expense. And the Tribe has promised just this very scenario in its own outline of what it intends to bring to the table.

Finally, the courts have long recognized that intervention in a case such as this one invariably causes delay. In *Bush v. Viterna,* 740 F.2d 350, 359 (5th Cir. 1984), the court confronted this precise situation:

> In acting on a request for permissive intervention, it is proper for the court to consider the fact that the [putative intervenor] has been granted *amicus curiae* status in this case. ... Indeed, this seems to be the very case envisioned by Judge Wyzansky in *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.,* 51 F.Supp. 972, 973 (D.Mass. 1943), when he stated:
>
>> It is easy enough to see what are the arguments against intervention when, as here, the intervenor merely underlines issues of law already raised by the primary parties. <u>Additional parties always take additional time.</u> Even if they have no witnesses of their own, they are the source of <u>additional questions, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair</u>. Where he presents no new questions, a third party can contribute most expeditiously by a brief amicus curiae and not by intervention.

(Emphasis supplied.)

By definition, intervention will cause delay and additional costs to the litigants. The Tribe has shown no reason why it should be allowed to intervene beyond its desire to tell its "story" about Termination and Restoration and efforts to attain economic self sufficiency. Both are irrelevant to this litigation; in addition, the tribal claims of financial impact are nothing more than speculation. The Magistrate missed these points in allowing intervention.

## CONCLUSION

For the reasons set forth above, the Magistrate's Memorandum Opinion should be reversed and the Tribe's motion to participate in this action as a party in intervention should be denied.

Respectfully submitted this 26th day of June 2008.

**BUTTE COUNTY, CALIFORNIA**

By Counsel

_____s_____
Dennis J. Whittlesey  (D.C. Bar No. 053322)
DICKINSON WRIGHT PLLC
1901 L Street, N.W. - Suite 800
Washington, D.C.  20036
Telephone: (202) 659-6928
Facsimile: (202) 659-1559


_____s_____
Bruce S. Alpert, Esquire (*Pro Hac Vice*)
County Counsel
COUNTY OF BUTTE
25 County Center Drive
Oroville, California  95965
Telephone: (530) 538-7621
Facsimile: (530) 538-6891

**OF COUNSEL:**

Scott R. Knapp, Esquire
DICKINSON WRIGHT PLLC
215 South Washington Square – Suite 200
Lansing, Michigan  48933

H. Scott Althouse, Esquire
DICKINSON WRIGHT PLLC
1901 L Street, N.W. - Suite 800
Washington, D.C.  20036