# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BUTTE COUNTY, CALIFORNIA, 25 County Center Drive, Oroville, CA 95965,<br><br>    Plaintiff,<br><br>v.<br><br>PHILIP N. HOGEN, in his official capacity as CHAIRMAN OF THE NATIONAL INDIAN GAMING COMMISSION, 1441 L Street, N.W., Suite 9100, Washington, D.C. 20005, NORMAN H. DESROSIERS, in his official capacity as COMMISSIONER OF THE NATIONAL INDIAN GAMING COMMISSION, 1441 L Street, Suite 9100, Washington, D.C. 20005, DIRK A. KEMPTHORNE, in his official capacity as SECRETARY OF THE DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240, CARL J. ARTMAN, in his official capacity as ASSISTANT SECRETARY - INDIAN AFFAIRS, DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240, and UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240,<br><br>    Defendants.<br><br>MECHOOPDA INDIAN TRIBE OF CHICO RANCHERIA, CALIFORNIA, a federally recognized Indian Tribe, c/o Dennis E. Ramirez, Chairman, Tribal Offices, 125 Mission Ranch Boulevard, Chico, CA 95926,<br><br>    Intervenor. | Case No.: 1:08-cv-00519-HHK-AK<br>Judge: Henry H. Kennedy, Jr.<br>Deck Type: Administrative Agency Review<br>Date Filed: 03/26/08<br><br>**OPPOSITION OF INTERVENOR MECHOOPDA INDIAN TRIBE OF CHICO RANCHERIA, CALIFORNIA TO PLAINTIFF'S OBJECTIONS** |

Intervenor Mechoopda Indian Tribe of Chico Rancheria, California ("Tribe"), a federally-recognized Indian tribe, submits this Opposition to Plaintiff Butte County's Objections to the Magistrate's Order Granting Intervention to the Tribe.

## I.     INTRODUCTION

Plaintiff asserts that the Court was wrong in allowing the Tribe permissive intervention in this lawsuit which will determine its future. In fact, it is Plaintiff which is wrong. In this Circuit and elsewhere, courts have universally held that a decision to grant or deny permissive intervention under Fed. R. Civ. Pro. 24(b) is wholly discretionary. *See, e.g.*, *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1048. Plaintiff's Objections to the Magistrate's Order granting the Tribe intervention are thus remarkable in that Plaintiff seeks to convince the Court that it erred in making a purely discretionary decision.[1]

The Tribe has twice demonstrated that it meets the standards for permissive intervention under Fed. R. Civ. Pro. 24(b). (Statement Of Points And Authorities In Support of Motion Of Mechoopda Tribe Of Chico, California To Intervene Under Federal Rule Of Civil Procedure 24 ("Open. Brf.") and Reply to Plaintiff's Opposition To Motion to Intervene ("Reply to Opp.")). The Court, in its discretion, chose to grant such intervention. Now Plaintiff attempts to convince the Court that its judgment was misguided. Plaintiff's Objections are without merit and a waste of judicial resources.

---

[1] Even Plaintiff acknowledges the decision to grant permissive intervention is purely discretionary. (Plaintiff's Objections To Magistrate's Order Granting Intervention to Mechoopda Tribe, ("Obj.") at 1.)

- 1 -

## II.     ARGUMENT

### A.     Adequate Representation Is Not A Factor In A Rule 24(b) Analysis.

Plaintiff argues that the Magistrate erred in failing to consider whether the Federal Defendants adequately represent the Tribe's interests. Plaintiff purports to cite to a body of case law which denies intervention to a tribe where the tribe is adequately represented by federal defendants. However, the cases cited by Plaintiff offer scant support for its position. Plaintiff first cites *Arizona v. California*, 460 U.S. 605 (1983). Although *Arizona* was used by both the Tribe and the Court to support the Tribe's intervention, Plaintiff attempts to distinguish *Arizona* from the current litigation by the fact that *Arizona* involved multiple tribes and a long-running dispute. (*See* Memorandum Opinion ("Mem. Op.") at 3, fn. 2; Open. Brf. at 11; Obj. at 2, 7.) However, in *Arizona*, the Supreme Court did not grant intervention because there were multiple tribes or due to the long-standing nature of the dispute. Rather, the Court based its decision on the fact that the "Tribes' interests…have been and will continue to be determined in this litigation since the United States' action as their representative will bind the Tribes to any judgment" and because "the Indians are entitled 'to take their place as independent qualified members of the modern body politic.'" 460 U.S. at 615 (internal citations omitted). So too here. Thus Plaintiff's attempt to use *Arizona* to argue that the Magistrate erred in not considering adequacy of representation is unpersuasive.

Plaintiff next returns to *South Dakota ex. rel. Barnett v. Dept. of Interior*, 317 F.3d 783 (8th Cir. 2003). (*See* Plaintiff's Opposition To Motion For Leave To Intervene Under Federal Rule 24(b) ("Opp.") at 7.) As we have previously explained, however, *South Dakota* considers whether the lower court abused its discretion by denying permissive intervention because other parties to the litigation would adequately represent the interests of the putative intervenor.

- 2 -

Noting that "[r]eversal of a decision denying permissive intervention is extremely rare," the Eighth Circuit held that the lower court did not abuse its discretion by considering adequacy of representation. *Id*. at 787.  As the Eighth Circuit also explained, whether a putative intervenor's interests would be adequately represented in its absence "is only a minor variable in the Rule 24(b) decision calculus." *Id*.  The Court went on to note that the putative intervenor had cited precedent that "probably would have persuaded [the court] to grant the motion if [it] were the district court ruling on the motion in the first instance." *Id*.  Notably, the precedent the Eighth Circuit found persuasive on the issue of whether an Indian tribe should be allowed to permissively intervene to protect its interests — *Arizona v. California*, supra — is the Supreme Court precedent that Plaintiff attempts to use to argue that the Tribe should be *denied* permissive intervention.  (Obj. at 2.)

Plaintiff also cites *U.S. Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) to argue that the Magistrate failed to properly consider adequacy of representation.  However, *Brennan* mirrors *South Dakota* in that the central question facing both courts is whether the lower court abused its discretion by denying permissive intervention.  *Brennan* explains that "[p]ermissive intervention is wholly discretionary with the trial court," and stresses "[t]he trial court's discretion is very broad; indeed, we have not found a single case in which denial of permissive intervention under Rule 24(b) was reversed solely for an abuse of discretion." *Id*. at 192.  Adequacy of representation is mentioned by *Brennan* only as one of many factors the trial court may consider in its discretion. *Id*. at 191.  Therefore, *Brennan*, like *South Dakota*, is notable for its deference to the trial court's decision regarding permissive intervention, discretion directly challenged by Plaintiff.

Plaintiff additionally cites *Seminole Nation of Oklahoma v. Norton, et al.*, 206 F.R.D. 1 (D.D.C. 2001), which is equally unpersuasive.  In *Seminole Nation*, the court denied intervention

- 3 -

because the proposed intervenors sought to impermissibly broaden the scope of the litigation, not because the proposed intervenors were adequately represented by federal defendants. *Id.* at 15. *Seminole Nation* is thus inapplicable to the whether a court must consider adequacy of representation in a Rule 24(b) analysis.

Lastly, Plaintiffs cite *Diamond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986), upon which the Magistrate relied in his decision.[2] (*See* Mem. Op. at 3, fn. 2.) Plaintiff claims that *Diamond* cannot be relied upon to grant the Tribe intervention because, in *Diamond*, the proposed intervenor's financial interests were at stake. Although we do not see how this argument relates to adequacy of representation, we stress that the Tribe's hopes for self-sufficiency and economic independence are intimately tied to development of the parcel in question. (*See* Open. Brf. at 2 - 8, Reply to Opp. at 10, fn. 4.)

As we have previously argued, the Tribe's research efforts uncovered no decisions in which the courts in this Circuit have relied upon adequacy of representation when deciding whether to allow a party with a stake in the outcome to permissively intervene. Presumably, if such case law existed, the County would have cited it. *Compare E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046-48 (D.C. Cir. 1998) (adequacy of representation not considered by court in permissive intervention analysis); *Appleton v. FDA*, 310 F. Supp. 2d 194, 196-97 (D.D.C. 2004) (same); *Mass. Sch. Law at Andover, Inc. v. U.S.*, 118 F.3d 776, 782 (D.C. Cir. 1997) (same). In sum, adequacy of representation is not a requirement of Rule 24(b), and not a factor the courts of this Circuit have embraced when deciding whether to allow a party to permissively intervene.

---

[2] *Diamond* involved intervention as of right, under Fed. R. Civ. Pro. 24(a), in which adequacy of representation is indeed a prerequisite. 792 F.2d 179, 192.

- 4 -

### B.     The Tribe Seeks To Present No New Claims And No Facts Outside The Administrative Record.

Plaintiff again argues that the Tribe will broaden the scope of the litigation and that the Tribe's defense to Plaintiff's claims will not share "a common question of law or fact" with the main action, as required by Rule 24(b). However, Plaintiff offers no evidence for its assertions and cites irrelevant case law.

First, Plaintiff cites *Seminole Nation* to argue that the Tribe will broaden the scope of the litigation. In *Seminole Nation*, the court denied intervention, in part, because the party seeking to intervene proposed to "file an ambitious and wide-ranging ten-count complaint as Plaintiff-Intervenors against both the federal government and the Seminole Nation," and the issues raised by the proposed intervenors differed greatly from those raised by plaintiffs. 206 F.R.D. at 13. The discrepancy between *Seminole Nation* and the intervention sought by the Tribe is best explained by *Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315 (D.D.C. 2007), a recent case from this Circuit in which a tribe sought to intervene as a defendant. Plaintiff in *Me-Wuk*, like Plaintiff in the present action, cited *Seminole Nation* in arguing that the putative intervenors would impermissibly broaden the scope of the litigation. *Id*. at 320. The court found *Seminole Nation* inapplicable, explaining, "[i]n *Seminole Nation*, putative intervenors, the Freedmen, in effect admitted that they were acting to circumvent [the applicable procedural rules] because they intended to bring claims as intervenors that they were not able to assert in *Davis*, a concurrent case, because of sovereign immunity limitations." *Id*. *Me-Wuk* further explains that the judge in *Seminole Nation* "revealed the Freedmen's attempt to intervene as a transparent effort to engage in impermissible 'judge shopping.'" *Id*. Unlike the party seeking intervention in *Seminole Nation*, the Tribe seeks to bring no additional claims, much less

circumvent any procedural requirements or "judge shop." In sum, Plaintiff's reliance upon *Seminole Nation* to argue against intervention by the Tribe is baseless.

Plaintiff later claims that the Tribe will not raise the same factual and legal issues as Defendants. However, Plaintiff nowhere explains how allowing the Tribe to defend against Plaintiff's challenge would broaden the litigation. The Tribe seeks to proceed on the same administrative record as Plaintiff and Federal Defendants. The fact that the Tribe may possess a different interpretation of the facts in that record — not to mention, attach different legal significance to such facts — would not broaden the scope of the litigation at all, but rather, lead to its meaningful resolution. *See United States v. American Bar Association*, 118 F. 3d 776, 782 (D.C. Cir. 1997) (advantage of permissive intervention is that "increased information" could "reduce the risk of error"); *United States Postal Service v. Brennan*, 579 F. 2d 188 (2d Cir. 1978) (factor relevant to permissive intervention includes whether party will contribute to "'full development of underlying factual issues in the suit and to the just and equitable adjudication of the legal issues presented'" (citation omitted)).

The County also argues — again without basis — that the Tribe will raise facts outside the scope of the administrative record upon which the federal agency officials relied when issuing the challenged approvals. (Obj. at 9-12.) The Tribe does not seek to bring any claims not already before the Court or outside the scope of the administrative record. (*See* Open. Brf. at 10; Reply to Opp. at 6-7.)

For example, the County contends the Tribe will raise issues "outside the limited administrative decision presented by [Plaintiff's Amended Complaint and] the Administrative Record" because the Tribe seeks to "introduce issues concerning termination and restoration of federal status, as well as its efforts to pursue economic self sufficiency." (Obj. at 6-7; *see id.* at 9-12.) However, as the Tribe has previously explained, the facts surrounding the Tribe's history

- 6 -

and attempts to achieve self-sufficiency are necessarily contained in the administrative record that was before the agencies when they made the decision Plaintiff challenges.  That history is central to the case, which explains why Plaintiff dedicates much of its Complaint to *its* version of the Tribe's history.  (*See* Complaint, ¶¶ 22-40; Amended Complaint, ¶¶ 26-44.)  In fact, Plaintiff relies upon its version of the Tribe's history to make its central arguments — that the National Indian Gaming Commission erred when concluding the site on which the Tribe seeks to construct and operate a gaming facility constitutes "restored lands" under the Indian Gaming Regulatory Act, and that the Bureau of Indian Affairs thereafter erred when approving the Tribe's request to take the site into trust as "restored lands."  (Complaint, ¶¶ 42-68; Amended Complaint, ¶ 46-90.)  Given Plaintiff's focus on the Tribe's history throughout its Complaint, as originally filed and as amended, it is only natural that the Tribe also would want and need to address that history, including its legal significance.  The Tribe should be allowed to do so, with reference to facts contained within the administrative record, just as Plaintiff seeks to do, to the detriment of the Tribe.

Finally, Plaintiff cites the Declaration of the Tribe's Chairman and the documents for which the Tribe sought judicial notice as proof that the Tribe will expand the scope of the litigation.  However, the Tribe provided the Chairman's Declaration simply as a means of substantiating certain statements made in its moving papers, and, as the Magistrate understood, requested judicial notice of certain documents "for the limited purpose of supporting its Motion." (Mem. Op. at 6.)  Additionally, all, if not substantially all, of the documents submitted for judicial notice will be in the administrative record.[3]

---

[3] The County even acknowledges that six of the 13 documents submitted by the Tribe for judicial notice will be in the administrative record.  (*See* Obj. at 11-12.)

### C. The Tribe's Intervention Will Not Cause Undue Delay or Prejudice.

The Court determined that the Tribe's intervention would not cause undue delay or prejudice. (Mem. Op. at 6.) Nonetheless, Plaintiff argues — without basis — that intervention by the Tribe will cause "delay and additional expenditure." (Obj. at 13.) Plaintiff cites only one case in support of this argument, *Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984). Notably, *Bush* resembles *South Dakota* and *Brennan*, supra, in that it concerns an appellate court reviewing a lower court's denial of permissive intervention for abuse of discretion. *Id*. at 359. *Bush* found no "extraordinary circumstances" that "would justify [its] determining that the district court clearly abused its discretion," and, accordingly, upheld the lower court's decision. *Bush* further emphasizes that the decision to grant or deny permissive intervention lies solely within the court's discretion, a notion against which Plaintiff's Objections are premised. In addition, Plaintiff's Objections ignore that Indian tribes have been permitted to intervene in this Circuit and elsewhere in similar cases. *See*, *e.g.*, *Michigan Gambling Opposition v. Kempthorne*, 525 F.3d 23, 28 (D.C. Cir. 2008); *City of Roseville v. Norton*, 348 F.3d 1020, 1023 (D.C. Cir. 2003); *see also El Dorado County v. Norton*, No. 02-1818, slip. op. at 2 (E.D. Cal. Jan. 10, 2005).

### III. CONCLUSION

The County argues that the parcel in question is simply a "single parcel" and that there "will be no permanent impact on the Tribe from a determination that the land cannot be utilized for gaming." (Obj. at 2.) However, as we have previously explained, other than an almond orchard and a cemetery, this "single parcel" is the sole land in which the Tribe holds an interest. The Tribe has had no land in trust on which to pursue economic development since the United States purported to terminate the sovereign status of the Tribe and its land, under the Rancheria

Act, in 1967. Since reinstatement of its federally-recognized sovereign status in 1992, the Tribe has steadfastly sought to have land placed into trust for the purpose of establishing a seat of tribal government. This "single parcel," which the Tribe acquired in 2001, is that land. Importantly, the Tribe chose the parcel in question because it is located only 10 miles from its former Rancheria and within the Tribe's aboriginal territory and the area to have been set aside for the Tribe by an unratified 1851 treaty between the United States and the Tribe. The property in question is thus not one of many potential locations on which the Tribe may establish a reservation and pursue self-sufficiency, but, rather, the only location.

If Plaintiff is granted the injunctive and declaratory relief it seeks, the Tribe's rights and livelihood will be substantially and perhaps irreparably harmed. The Tribe presently lives largely in poverty. Over fifty percent of adult Tribal members are unemployed. Significantly, a third of employed Tribal members live below the poverty level. An estimated forty percent of tribal members live in substandard housing, while forty-four percent of Tribal elders subsist on government disability payments. (*See* Declaration of Dennis J. Ramirez in Support of Motion of the Mechoopda Indian Tribe of Chico Rancheria, California to Intervene, filed May 13, 2008, ¶ 5.) The Tribe meets the standards for permissive intervention under Rule 24(b), and does not seek to bring any new claims or evidence outside the scope of the administrative record. Accordingly, the Tribe respectfully asks the Court to deny Plaintiff's Objections.

Respectfully submitted this 10th day of July 2008.

                                          Mechoopda Indian Tribe of Chico Rancheria,
                                        California, Intervenor-Defendant,

| | |
|---|---|
| | By       /s/ |
| Michael J. Anderson, DC Bar 417887 | Nicholas C. Yost, USDC-DC Bar 968289[4] |
| Matthew Kelley, DC Bar 502726 | Paula M. Yost, CA Bar 156843 |
| Anderson Tuell LLP | Katherine K. Moore, CA Bar 235958 |
| 300 Independence Avenue, SE | Sonnenschein Nath & Rosenthal LLP |
| Suite 200 | 525 Market Street |
| Washington, D.C. 20003 | 26th Floor |
| Telephone: (202) 543-5000 | San Francisco, CA  94105-2708 |
| Facsimile:  (202) 543-7716 | Telephone: (415) 882-5000 |
| | Facsimile:  (415) 882-0300 |

Christina Kazhe, CA Bar 192158
Kazhe Law Group P.C.
8359 Elk Grove Florin Road
Suite 103287
Sacramento, CA 95829
Telephone: (916) 226-2590
Facsimile:  (916) 880-5691

---

[4] Mr. Yost is admitted to practice before this Court (USDC-DC Bar No. 968289).  Mr. Yost is admitted to the District of Columbia Bar, but his membership is inactive.  Mr. Yost is an active member of the California Bar and practices under that membership (Bar No. 35297).

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BUTTE COUNTY, CALIFORNIA, 25 County Center Drive, Oroville, CA 95965,<br><br>    Plaintiff,<br><br>v.<br><br>PHILIP N. HOGEN, in his official capacity as CHAIRMAN OF THE NATIONAL INDIAN GAMING COMMISSION, 1441 L Street, N.W., Suite 9100, Washington, D.C. 20005, NORMAN H. DESROSIERS, in his official capacity as COMMISSIONER OF THE NATIONAL INDIAN GAMING COMMISSION, 1441 L Street, Suite 9100, Washington, D.C. 20005, DIRK A. KEMPTHORNE, in his official capacity as SECRETARY OF THE DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240, CARL J. ARTMAN, in his official capacity as ASSISTANT SECRETARY - INDIAN AFFAIRS, DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240, and UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240,<br><br>    Defendants.<br><br>MECHOOPDA INDIAN TRIBE OF CHICO RANCHERIA, CALIFORNIA, a federally recognized Indian Tribe, c/o Dennis E. Ramirez, Chairman, Tribal Offices, 125 Mission Ranch Boulevard, Chico, CA 95926,<br><br>    Intervenor. | Case No.: 1:08-cv-00519-HHK-AK<br>Judge: Henry H. Kennedy, Jr.<br>Deck Type: Administrative Agency Review<br>Date Filed: 03/26/08<br><br><br><br>**PROOF OF SERVICE** |

I, Kimberly J. Soto, hereby declare:

I am employed in the City and County of San Francisco, California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Sonnenschein Nath & Rosenthal LLP, 525 Market Street, 26th Floor, San Francisco, California 94105.

On July 10, 2008, I caused to be served on the interested parties in this action the following document(s):

1. **OPPOSITION OF INTERVENOR MECHOOPDA INDIAN TRIBE OF CHICO RANCHERIA, CALIFORNIA TO PLAINTIFF'S OBJECTIONS**

by placing a true copy(ies) thereof, on the above date, enclosed in a sealed envelope, following the ordinary business practice of Sonnenschein Nath & Rosenthal LLP, as follows:

> Bruce S. Alpert
> 25 County Center Drive
> Oroville, CA  95965
> Telephone:  (530) 538-7621
> Facsimile:  (530) 538-6891
> E-mail:  balpert@buttecounty.net

☐ U.S. MAIL:  I am personally and readily familiar with the business practice of Sonnenschein Nath & Rosenthal LLP for collection and processing of correspondence for mailing with the United States Postal Service, pursuant to which mail placed for collection at designated stations in the ordinary course of business is deposited the same day, proper postage prepaid, with the United States Postal Service.

☐ FEDERAL EXPRESS:  I served the within document in a sealed Federal Express envelope with delivery fees provided for and deposited in a facility regularly maintained by Federal Express.

☐ FACSIMILE TRANSMISSION: I caused such document to be sent by facsimile transmission at the above-listed fax number for each party.

☒ ELECTRONIC TRANSMISSION**:**  I caused such document(s) to be sent via the email address listed for such party.  I did not receive, within a reasonable time, an electronic message or other indication that the transmission was unsuccessful.

- 3 -

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on July 10, 2008, at San Francisco, California.

/s/<br>
Kimberly J. Soto