IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BUTTE COUNTY, CALIFORNIA** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:08-cv-00519-HHK |
| v. | ) | |
| | ) | **PLAINTIFF'S MOTION FOR** |
| **PHILIP N. HOGEN, et al.,** | ) | **ORDER REQUIRING** |
| Defendants. | ) | **THE DOI ADMINISTRATIVE** |
| _____ | ) | **RECORD BE SUPPLEMENTED** |

Plaintiff Butte County, California requests the Court to direct Federal Defendants Dirk A. Kempthorne and the Department of the Interior ("DOI") to supplement and complete the Administrative Record for DOI's final agency action to accept land into trust for gaming for the Mechoopda Indian Tribe of the Chico Rancheria ("Tribe"), which was published in the Federal Register on May 8, 2008, with the documents and correspondence enumerated below.

Plaintiff's Motion is filed contemporaneously with a second Motion for Order Requiring the NIGC Administrative Record be Supplemented.

A Joint Memorandum of Points and Authorities is also filed in support of the two Motions.

The specific materials which can be identified from other materials which were produced, but which were not included in the Administrative Record are as follows:

<u>Documents and Correspondence to Supplement the Administrative Record</u>

1. Any and all files, information, internal analysis and interagency correspondence, including to and from the Tribe, concerning a report entitled "Mechoopda Indian Tribe of the Chico Rancheria" by Stephen Dow Beckham (January 2006) ("Beckham Report"). DOI AR005661.

2. Any and all files, information, internal analysis and interagency correspondence, including to and from the Tribe, concerning, relied upon or utilized by the Division of Indian Affairs in rendering the hand-written as well as typed and numbered comments attached to the Draft Memorandum, To Phillip Hogan, Chairman, NIGC; From: Penny Coleman, Acting General Counsel, NIGC; Re: Whether gaming may take place on lands taken into trust after October 17, 1988, by the Mechoopda Tribe of the Chico Rancheria." NIGC AR002859- 002872.

3. Any and all files, information, internal analysis and interagency correspondence, including to and from the Tribe, concerning DOI's review, analysis and concurrence with the March 13, 2003 NIGC Land Determination authored by Penny Coleman. DOI AR000328. *See also* DOI AR000813 (Letter from Office of the Secretary to Dennis J. Whittlesey) (stating DOI's concurrence); NIGC AR002606 (referencing NIGC coordinating with DOI Solicitor's Office on the lands determination); NIGC AR002560 (referencing finalizing the lands determination); NIGC AR002039 (NIGC seeking DOI's final approval comments).

4. August 1998 Land Determination from the Solicitor's Office of the Department of the Interior, authored by John Leshy, which is referenced in the March 13, 2003 NIGC Land Determination authored by Penny Coleman ("Leshy Land Determination"). DOI AR000328 ("

5. Any and all files, information, internal analysis and interagency correspondence, including to and from the Tribe, concerning the Leshy Land Determination.

6. Any and all memoranda authored by Associate Solicitor Derrill Jordan ("Jordan Opinion").

7. Any and all files, information, internal analysis and interagency correspondence, including to and from the Tribe, concerning the Jordan Opinion.

8. June 19, 1998 Letter from Congressman Vic Fazio to Interior Secretary Babbitt concerning the Tribe's land-into-trust application. NIGC AR002747.

9. August 3, 1998 Letter from Solicitor's Office to Congressman Vic Fazio. NIGC AR002749.

10. Any and all files, information, internal analysis and interagency correspondence, including to and from the Tribe, concerning the exchange of letters between Congressman Vic Fazio and the Interior Department described in numbers 7 and 8 above.

11. The Tribe's "Restoration Plan" that it developed in collaboration with the Bureau of Indian Affairs in 1996, which is referenced in NIGC AR002567; NIGC AR002720 and NIGC AR 002559 (responding to Maria Getoff, NIGC's email inquiry regarding "the parcel of land the tribe planned to acquire pursuant to the 1996 restoration plan," Christina Katz, Counsel for the Mechoopda Tribe, notes, in part, "[t]he [parcel] the Tribe planned to acquire pursuant to the 1996 restoration plan was optioned to purchase").

12. The "Mechoopda Project Overview" referenced in NIGC AR003079.

13. The document entitled "Mechoopda Tribal History: A Struggle for Economic Self-Sufficiency" referenced in NIGC AR002945.

14. Any and all files, information, internal analysis and interagency correspondence, including to and from the Tribe, regarding the Tribe's 2000 attempts to secure informal reconsideration of their land determination. NIGC AR002720 (stating "[i]n December 2000, the Mechoopda Tribe met with the Department of Interior officials, to request a review of the Solicitor's 'informal' position regarding the Tribe's ability to operate gaming on land it planned to acquire as part of its Restoration Plan").

15. April 25, 2007 Letter from Dennis J. Whittlesey to Secretary of the Interior re: notice of intent to litigate acceptance of the lands-into-trust for gaming.

Pursuant to LCvR 7(m), plaintiff's counsel has discussed this Motion with counsel for the Federal Defendants and counsel for the Intervenor-Defendant, and they do not concur in this motion.

**DATED** this 5th day of September 2008.

                                                              s/Dennis J. Whittlesey_____
DICKINSON WRIGHT PLLC
Dennis J. Whittlesey (DC Bar No. 053322)
1901 L St. NW, Suite 800
Washington, DC 20036
202-659-6928
dwhittlesey@dickinsonwright.com

Bruce S. Alpert (*Pro Hac Vice*)
BUTTE COUNTY, CALIFORNIA
25 County Center Drive
Oroville, CA 95965
530-538-7621
balpert@buttecounty.net

DC 125101v2

4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BUTTE COUNTY, CALIFORNIA** | ) | |
| | ) | 1:08-cv-00519-HHK |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF POINTS AND** |
| v. | ) | **AUTHORITIES IN SUPPORT OF** |
| | ) | **PLAINTIFF'S TWO MOTIONS FOR** |
| **PHILIP N. HOGEN, et al.,** | ) | **ORDERS REQUIRING THE NIGC AND** |
| | ) | **DOI ADMINISTRATIVE RECORDS** |
| Defendants. | ) | **BE SUPPLEMENTED** |
| | ) | |

## I.    INTRODUCTION

This action seeks judicial review pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), of decisions rendered by the National Indian Gaming Commission ("NIGC") and the Secretary of the Interior and the Assistant Secretary of the Interior for Indian Affairs on behalf of the Department of the Interior ("DOI"). Each of the decisions at issue approved Indian gaming pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.*, and was predicated on the assumption that the gaming would be conducted on land qualifying as "restored lands" under IGRA Section 20(b)(1)(B)(iii), 25 U.S.C. § 2719(b)(1)(B)(iii). The APA requires that "the whole record" be reviewed during the decision-making process,[1] and with this litigation the federal defendants are required to furnish the complete Administrative Records ("AR") for each decision as the foundation for both briefing and this Court's review and decision.

---

[1]    5 U.S.C. § 706.

Pursuant to the Amended Case Management Report filed on July 15, 2008, and this Court's Order of July 16, 2008, these ARs were to be filed and served on the parties herein on or before August 27, 2008. An Index for each was filed on that date, but the ARs were not received by plaintiff's counsel until the following day, and then in a format which required computer technicians to convert them into a usable format. After the materials finally could be reviewed by plaintiff's attorneys, it became clear that critical materials and files were not included in the two ARs, including materials specifically provided by plaintiff before the decisions were made and other materials that were identified in advance to the federal defendants' counsel by plaintiff's counsel as important, relevant and critical.

Significantly, the materials identified in the two Motions to Supplement were clearly within the federal defendants' possession, since they are referred to in materials which have been produced. Thus, they unquestionably were either before the decision-makers or known to exist when the decisions were made, but they were ignored. Since these materials include documents known to contradict the decisions made, their importance to plaintiff's ability to litigate this case and this Court's informed review cannot be denied.

## II.   DISCUSSION

Central to plaintiff's need to have the two ARs supplemented is that documents were available to the decision-makers and either ignored or dismissed since they were not supportive of the decisions made. That they are not now within the ARs strongly suggests that their exclusion was deliberate when the ARs were being compiled, especially since at least one major missing file identifiable from the records which were included was specifically identified by

plaintiff's counsel as material which should be part of the submission.[2]  The federal argument in opposition likely will be that they were not provided because they were not considered by the decision-makers.  The courts have rejected this position in the past:  "Reviewing less than the full administrative record might allow [an agency] to withhold evidence unfavorable to its case, and so the APA requires review of the whole record." *American Radio Relay League, Inc. v. F.C.C.*, 524 F.3d 227, 243 (D.C.Cir. 2008) (Judge Tatel's concurring opinion).  Thus, non-inclusion of materials relevant to the decision is contrary to the law:

> Nor is there any doubt that, as our case law makes clear, the APA means exactly what it says: an agency must make the "*whole* record" available, especially where, as here, the undisclosed portions might very well undercut the agency's ultimate decision.

*American Radio Relay League, Inc,* 524 F.3d 243 (J. Tatel concurrence).

This Court has confirmed this rule, declaring that APA Section 706 directs a court reviewing an agency decision to "review the whole record or those parts of it cited by a party." *Pacific Shores Subdivision California Water District v. United States Army Corps of Engineers*, 448 F.Supp. 2d 1 (D.D.C. 2006) (emphasis added).  Review of the "whole record" under Section 706 "is to be based on the full administrative record that was before the [agency decisionmakers] at the time [they] made [their] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

While this Court has interpreted the whole record to include all documents and materials that the agency directly or indirectly considered, *Pacific Shores*, 448 F.Supp. 2d at 4, an agency cannot sidestep materials adverse to its decision.

---

[2]     Declaration of Dennis J. Whittlesey attached to this Memorandum as Exhibit ¶ 2..

To that end, the D.C. Circuit identified three independent circumstances in which the courts should require supplementation of ARs in order to make them "whole" prior to proceeding further with APA litigation in the case of *James Madison Ltd. by Hecht v. Ludwig,* 82 F.3d 1085, 1095 (D.C.Cir. 1996):

**(1)** when it appears the agency deliberately or negligently excluded documents adverse to its decision, *citing Kent County v. EPA*, 963 F.2d 391, 395-96 (D.C. Cir. 1992) ;

**(2)** the materials provide background information in order to determine whether the agency considered all the relevant factors, *citing Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 285 (D.C. Cir. 1981) [which cited *Asarco, Inc. v. EPA,* 616 F.2d 1153, 1160 (9th Cir. 1980)] ; or,

**(3)** the "agency 'failed to explain administrative action [so] as to frustrate judicial review," *quoting Camp v. Pitts,* 411 U.S. 138, 142-43 (1973).

While the existence of any one of these elements is sufficient to require that the ARs be supplemented, they all exist in this case.

Plaintiff recognizes that it "must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the [AR]," *Pacific Shores*, 448 F.Supp. 2d at 6.  To this end, plaintiff respectfully submits that when materials relevant to the legal and factual foundation for decision (albeit unfavorable to the action taken), it can be concluded that those materials were known to the decision-makers and ignored.  Given the facts present here, it is not mere speculation to say the NIGC and DOI decision-makers either deliberately or negligently excluded these from consideration and – through that exclusion – affirmatively failed to consider all of the relevant factors before rendering the decisions at issue.

4

Each of the Motions to Supplement identifies the materials not found within the respective ARs. As is shown below, some of the documents are within the AR for one of the two agencies before this Court but conspicuously absent from the other, and other documents are notably absent from both records although they are identified by materials which were produced.

A.  **The Agencies Deliberately or Negligently Excluded Documents Adverse to Their Decisions.**

The two decisions being challenged here apparently rely on an NIGC determination rendered in early 2003 concluding that the subject land qualifies for "restored land" status under IGRA as a matter of fact and law. And that positive determination followed a negative "restored lands" land determination issued by the Solicitor for DOI in 1998 for the same tribe involving a different site located in Sutter County and far from the land now at issue.

The second land determination which is at the heart of this litigation was issued by NIGC Acting General Counsel Penny Coleman on March 14, 2003 ("Coleman Determination"). (DOI AR000338 and NIGC AR002027) Based on that decision, the NIGC approved a Tribal Gaming Ordinance in 2007 and DOI accepted the subject site into trust for gaming in 2008. Yet, the decision-makers in both agencies received detailed information from plaintiff prior to those decisions which directly contradict the tribal claims which were accepted by the NIGC in 2003 in the Coleman Determination without apparent independent investigation by the Commission staff.

In multiple written communications to both DOI and NIGC over some 20 months, the County furnished multiple copies of an expert Report contradicting the factual premise for the "restored lands" analysis contained in the Coleman Determination (*see, e.g.* Whittlesey letter dated June 16, 2006, DOI AR002695). Yet, no agency document produced in either AR even mentions, let alone discusses, that Report which is entitled "Mechoopda Indian Tribe of the

5

Chico Rancheria" and written by Dr. Stephen Dow Beckham, Pamplin Professor of History at Lewis & Clark College (January 2006) (Beckham Report) (DOI AR005661). The absence of any analysis of the Beckham Report would be surprising but significant because the federal defendants should not have relied on the 2003 Coleman Determination without attempting to first reconcile the significant discrepancies between the Beckham Report and the Coleman Determination. Such reconciliation is critical because the two documents include abject contradictions in historical facts as to tribal existence, membership and land occupancy. The Beckham Report is included in the DOI AR (AR005661) but is absent from the NIGC AR, an absence which is neither explained nor lawful. (*But see* Ltr. from Paul McIntosh, Chief Administrative Officer, Butte County to Clay Gregory, Regional Director, BIA dated Aug. 11, 2006, NIGC AR000409 (stating that copies of the Beckham Report "have been furnished to the Secretary of the Interior, the National Office of Indian Gaming Management and the National Indian Gaming Commission")).

      The only document even addressing the Beckham Report which plaintiff could locate within the two ARs is a letter from George Skibine, Acting Deputy Assistant Secretary of the Interior for Indian Affairs, to plaintiff's counsel declaring that DOI will not review the Beckham Report and the detailed contradictory information it provides for the reason that DOI concurred in the Coleman Determination some three years previously. Thus, Skibine simply stated that DOI did not intend to consider the new and contradictory information developed by Beckham, no matter how authoritative. (NIGC AR000290 and DOI AR 000813). NIGC's response to its receipt of the Beckham Report was (1) no response to plaintiff of any kind, and (2) its deliberate exclusion from the NIGC AR. While DOI has not produced any assessment of the Beckham

6

Report, it similarly has not produced any documentation of concurrence in the NIGC's land determination of March 14, 2003, reported by Skibine at DOI AR000813.

Moreover, there is another total failure to produce significant materials, *to-wit*, files affirmatively identified to the federal defendants' counsel by plaintiff as relevant. This failure is disclosed by materials in the two ARs revealing that sometime prior to 1996 the Mechoopda Tribe "prepared a restoration plan in collaboration with the [Bureau of Indian Affairs] wherein it identified a parcel of land as ['restored land'] for gaming purposes." (DOI AR000335 and NIGC AR002035) This land is identified as a site in Sutter County, far from the current site for which the land status was determined. (DOI AR008480) Ultimately, the Tribe's 1996 request for a land determination was denied by the DOI Solicitor John Leshy on a legal theory which subsequently was rejected by federal courts in litigation involving tribes in Michigan and Oregon. Solicitor Leshy's determination letter to the tribe was dated August 3, 1998, and on that same date he also informed a member of Congress that the tribal application had been denied. DOI failed to include in the AR (1) those specific communications, (2) the 1996 tribal application to DOI requesting restored land status with representations of historical tribal use and occupancy of the Sutter County property with their almost certain inconsistencies with the subsequent land determination materials submitted to NIGC years later, or (3) records of discussions between the tribe and DOI which are reported in some of the AR materials.

In fairness, it should be noted that NIGC did not produce the two Leshy letters from its files although it did furnish the tribal application submitted to NIGC which included them among many other pages of materials. (NIGC AR002747 and NIGC AR002749) However, there is no file within the NIGC materials disclosing the factual predicate for the earlier and unsuccessful land application nor are there any materials in which the NIGC reconciled the two contradictory

tribal claims to restored land status for sites in different counties. However, that NIGC had some of this material is clearly suggested by Acting General Counsel Coleman's citation to it in her land determination. (DOI AR000335 and NIGC AR002034-35)

The files concerning the prior land determination request are clearly relevant and critical to the subsequent decisions for they certainly contain tribal justification and documentation supporting restored land status for a site far removed from the subsequently-approved site. If this tribe has two separate histories for the two separate sites, then the plaintiff and this Court should have the opportunity to consider that inconsistency. And, the only explanation for exclusion of these materials from the ARs by both agencies is that it was deliberate, since these materials were called to the attention of the federal defendants' counsel weeks before the ARs were finalized or delivered.

B.  **The Omitted Materials Provide Background Information in Order to Determine Whether the Agencies Considered all the Relevant Factors.**

Restored land status can only be determined through a careful assessment of tribal history and the lands occupied by the tribal group. The seriousness of this determination is underscored by the necessity to develop a competent presentation of law and facts demonstrating a historical connection to the subject lands by the tribe or its predecessor entity. The seriousness of the undertaking is underscored by DOI's new regulations for restored land determinations. *See*

Federal Register, Vol. 73, No. 98 at § § 292.11, 292.12 and the provisions of the second section are particularly instructive.[3]

All of this demonstrates that more is required in land determinations than an agency merely accepting a tribe's current representation of its entitlement to restored lands status for a given parcel. And the omission from the ARs of the Leshy files showing the basis for the earlier restored lands request as to lands far from the current site is extremely important to the approvals of (a) the Tribal Gaming Ordinance and (b) the fee-to-trust for gaming application at issue in this litigation. Moreover, any analysis of the Beckham Report or absence of consideration to the specific factual challenges to tribal claims contained in that Report also are critical to this Court's consideration of whether the agencies considered all of the relevant factors leading to restored lands determinations at the time of the final agency actions at issue.

---

[3] Sec. 292.12 How does a tribe establish connections to newly acquired lands for the purposes of the ``restored lands'' exception?

To establish a connection to the newly acquired lands for purposes of Sec. 292.11, the tribe must meet the criteria in this section.

(a) The newly acquired lands must be located within the State or States where the tribe is now located, as evidenced by the tribe's governmental presence and tribal population, and the tribe must demonstrate one or more of the following modern connections to the land:

(1) The land is within reasonable commuting distance of the tribe's existing reservation;
(2) If the tribe has no reservation, the land is near where a significant number of tribal members reside;
(3) The land is within a 25-mile radius of the tribe's headquarters or other tribal governmental facilities that have existed at that location for at least 2 years at the time of the application for land-into-trust; or
(4) Other factors demonstrate the tribe's current connection to the land.

(b) The tribe must demonstrate a significant historical connection to the land.

(c) The tribe must demonstrate a temporal connection between the date of the acquisition of the land and the date of the tribe's restoration. To demonstrate this connection, the tribe must be able to show that either:
(1) The land is included in the tribe's first request for newly acquired lands since the tribe was restored to Federal recognition; or
(2) The tribe submitted an application to take the land into trust within 25 years after the tribe was restored to Federal recognition and the tribe is not gaming on other lands.

**C.    The Agencies Failed to Explain Administrative Action
so as to Frustrate Judicial Review.**

All of the foregoing discussion gives focus to the failures of the agencies since the materials discussed here clearly are relevant to the agency actions at issue in this litigation. The materials discussed in this Memorandum and the additional materials identified in the two Motions to Supplement clearly relate to the land determination issue before this Court and clearly are critical for judicial review of the administrative decisions.

By failing to include these materials, the agencies are pretending they either don't exist or have no relevance to their decisions. Yet, the materials which have been produced are starkly silent as to how or why the administrative actions could have been taken without a reconciliation with adverse information which was on the decision-makers' desks. These failures deprive this Court of information going directly to the question of whether the agency actions were arbitrary and capricious. This is doubly true if the agencies simply elected to ignore the adverse materials and information in their files.

### III.    CONCLUSION

The NIGC approval of the site-specific Tribal Gaming Ordinance and DOI's acceptance of the site into trust for gaming were final agency actions. If those actions were taken in derogation of critical adverse information in the agencies' files, then this Court's review should focus on how that fact impacted the decision-making process. Plaintiff respectfully submits that the agencies' avoidance of critical information in making the contested decisions was contrary to the requirements of the APA and necessitate an order directing that the ARs be supplemented before this litigation proceeds. Until the ARs are complete, plaintiff cannot adequately present its case and this Court will not have all of the information critical to adjudication of this matter.

    For the reasons set forth above, plaintiff Butte County respectfully requests this Court to grant its (1) Motion for Order Requiring the NIGC Administrative Record Be Supplemented and (2) Motion for Order Requiring the DOI Administrative Record Be Supplemented.

    **DATED** this 5th day of September 2008.

                                             s/Dennis J. Whittlesey_____
                                             DICKINSON WRIGHT PLLC
                                             Dennis J. Whittlesey (DC Bar No. 053322)
                                             1901 L St. NW, Suite 800
                                             Washington, DC 20036
                                             202-659-6928
                                             dwhittlesey@dickinsonwright.com

                                             Bruce S. Alpert (*Pro Hac Vice*)
                                             BUTTE COUNTY, CALIFORNIA
                                             25 County Center Drive
                                             Oroville, CA 95965
                                             530-538-7621
                                             balpert@buttecounty.net

                                             Attorneys for Plaintiff Butte County

DC 35614-1 124984v1

# EXHIBIT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMADOR COUNTY, CALIFORNIA** | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. 1:05CV00658 (RWR) |
| | ) | |
| **DIRK A. KEMPTHORNE,** *et al.,* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DECLARATION OF DENNIS J. WHITTLESEY

**DENNIS J. WHITTLESEY** does hereby make the following Declaration:

1.  I am one of counsel of record for Butte County in this litigation. I have personal knowledge of the facts set forth in this Declaration.

2.  On July 18, 2008, I communicated via e-mail with the counsel of record herein for the federal defendants and the Defendant-Intervenor Tribe to remind them that the Tribe had been denied a "restored lands" for gaming determination by the Department of the Interior at a time prior to the March 2003 positive land determination rendered by NIGC Acting General Counsel Penny Coleman and requested that steps be taken to insure that the files associated with that tribal request for determination be included in the Administrative Records for this litigation. In response to that communication, counsel for the Defendant-Intervenor Tribe advised counsel for the federal defendants that the prior negative determination related to a site in Sutter County.

1

2

**I declare** under penalty or perjury under the laws of the United States that the foregoing is true and correct. Executed on this 5th day of September 2008.

_____
Dennis J. Whittlesey

DC 35614-1 125165v1