UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BUTTE COUNTY, CALIFORNIA,

           Plaintiff,

      v.

PHILIP N. HOGEN

and

NORMAN H. DesROSIERS,

           Defendants.

Civil Action 08-00519  (HHK)

**MEMORANDUM OPINION**

Plaintiff Butte County, California ("County") brings this action pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*. ("APA"), against the following defendants in their capacities as officials of the National Indian Gaming Commission ("NIGC") or of the Department of the Interior ("Department"):  Phillip N. Hogen, NIGC Chairman ("Chairman"); Norman H. DesRosiers, NIGC Commissioner ("Commissioner"); Ken Salazar, Secretary of the Interior ("Secretary"); George Skibine, Acting Assistant Secretary for Indian Affairs ("Assistant Secretary"); and the Department (together, "Defendants").  This action challenges two decisions—one of the NIGC and another of the Department; both concern defendant-intervenor Mechoopda Indian Tribe of Chico Rancheria ("Tribe").[1]  First, the County challenges a 2007 NIGC decision, which, pursuant to the Indian Gaming Restoration Act, 25 U.S.C. §§ 2701 *et seq*.

---

[1] There is some dispute as to whether the members of the present day and federally-recognized Tribe are actual descendants of the original Mechoopda Indian Tribe.  Rather than confusing the issue, the court will refer to the historical and present-day tribe(s) as the "Tribe," without intending such reference to express a conclusion as to whether they are the same.

("IGRA"), approved a gaming ordinance the Tribe had enacted.  Second, the County challenges a 2008 Department decision to take a parcel of land in the County into trust on behalf of the Tribe ("Chico Parcel") pursuant to the Indian Reorganization Act, 25 U.S.C. §§ 465 *et seq*. ("IRA").  In essence, these challenges raise the same question of law:  whether the Chico Parcel qualifies as a "restoration of lands" under the IGRA thereby making it eligible for gaming under an IGRA exception to its general prohibition against gaming on Indian lands taken into trust after October 17, 1988.

Before the court are Defendants' motion to dismiss, or, in the alternative for summary judgment [##41, 46], the Tribe's motion to dismiss, or, in the alternative for summary judgment [##42, 47], and the County's cross-motion for summary judgment [#55].  Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that the motions for summary judgment filed by the Tribe and Defendants must be granted, and the motion for summary judgment filed by the County must be denied.

## I.  BACKGROUND

The United States recognized a tribe of Indians known as the Mechoopda as early as 1851.  (NIGC AR 002809-13.)  In the mid-nineteenth century, the California gold rush and policies related thereto displaced the Tribe, at least in part, from its ancestral lands in and around the County.  (NIGC AR 000467, 002718.)  In response to the displacement of the Tribe and other Indian tribes, the United States created "rancherias," which it held in trust for the Indians who settled on them.  One such rancheria was the Chico Rancheria, which was established in 1939 and located within a family-owned ranch ("Bidwell Ranch").  (NIGC AR 000467.)  The Tribe alleges to have resided on the Chico Rancheria from 1939 until the present.  (NIGC AR 000467-

68.) Although the County admits the Tribe resided on the Chico Rancheria, it contends that it resided there not as a tribe but as a disparate group of Indians employed by the Ranch. Regardless of whether the Tribe or the County is correct, the facts are that, in 1967, the United States terminated the Chico Rancheria along with federal recognition of the Tribe. (NIGC AR 002721.)

In 1986, the Tribe filed suit challenging the termination of its federally-recognized status. (NIGC AR 000467.) The lawsuit ended upon entry of a stipulated judgment between the Tribe, the United States, and the City of Chico (which had since subsumed the Chico Rancheria) ("Scotts Stipulation"). (NIGC AR 002731-42.) Under the Scotts Stipulation, the Tribe regained its status as a federally-recognized sovereign tribe. The Scotts Stipulation did not, however, restore the Chico Rancheria because the lands that comprised the former Chico Rancheria were now part of the City of Chico and the California State University at Chico. Accordingly, the parties to the Scotts Stipulation agreed that the former Chico Rancheria would not be restored, but that the United States would consider taking other lands into trust for the benefit of the Tribe. (NIGC AR 000468.)

Thereafter, the Tribe took various actions to identify and secure land, which could then be held in trust by the United States for the benefit of the Tribe. (NIGC AR 002720, 002034-35.) The effort to procure land for the Tribe is governed by the IRA, which provides in relevant part:

> The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.

\*\*\*

> Title to any lands or rights acquired pursuant to this Act or the Act of July 28, 1955 (69 Stat. 392), as amended (25 U.S.C. 608 et seq.) shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.

25 U.S.C. § 465.  Once the United States could acquire land in trust for the Tribe, the Tribe planned to develop gaming operations on the land as a means of generating tribal government revenue.[2]  (NIGC AR 002873-75.)  Because the United States would be taking such land into trust for the benefit of the Tribe after October 17, 1988, whether such gaming would be permitted on the land is governed by the Restoration of Lands Exception of the IGRA, which provides in relevant part:

> (a) Prohibition on lands acquired in trust by Secretary
>
> Except as provided in subsection (b) of this section, gaming regulated by this chapter shall not be conducted on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988 . . .
>
> \*\*\*
>
> (b) Exceptions
>
> (1) Subsection (a) of this section will not apply when–
>
> \*\*\*
>
> (B) lands are taken into trust as part of –
>
> \*\*\*
>
> (iii) the *restoration of lands* for an Indian tribe that is restored to Federal recognition.

25 U.S.C. § 2719 (emphasis added) ("ROLE").

In 1996, the Tribe identified certain land in Sutter County, California ("Sutter Land") as a potential site for its land trust and gaming operations, but the Tribe abandoned its efforts after the

---

[2] The Tribe sought to operate Class II gaming, which includes games like bingo, and Class III gaming, which includes games like roulette, poker, blackjack, and slot machines.  *See* 25 U.S.C. §§ 2703, 2710.

4

Department indicated that the Sutter Land would not qualify as a "restoration of lands," and therefore the Tribe would be unable to conduct gaming operations on it. (NIGC AR 002034-35.) In 2001, the Tribe acquired a property interest in the Chico Parcel as an alternative location for its trust and gaming operations. (NIGC AR 002035.) Even before the Department determined that it would take the Chico Parcel into trust for the benefit of the Tribe, the Tribe adopted a tribal ordinance regulating Class II and III gaming operations within its jurisdiction. (NIGC AR 002873.) The Tribe submitted a gaming management contract to the NIGC along with information purporting to establish that the Chico Parcel qualified for gaming under the ROLE. (NIGC AR 002859.)

In 2003, the Office of General Counsel for the NIGC ("OGC") considered the Tribe's submission and issued an opinion concluding that the Chico Parcel qualified as a restoration of lands, and therefore gaming should be permitted on it under the ROLE ("Opinion"). (NIGC AR 002038.) After the OGC offered its Opinion but before the NIGC had issued any decision with respect to the proposed gaming ordinance, the County commissioned an ethno-historian to investigate whether the members of the Tribe were descendants of the historic Mechoopda Indian Tribe.[3] In 2006, he completed his investigation and prepared a report concluding that they were not ("Beckham Report"). The County provided the Beckham Report to the NIGC and the

---

[3] As discussed in Section II.B.1, *infra*, the connection between the Tribe and the historic Mechoopda Tribe is significant because, according to the County, the leading case law requires the Tribe to have a historic connection to the Chico Parcel for it to qualify as a "restoration of lands" and the ROLE. *See Grand Traverse Band of Ottawa and Chippewa Indians v. United States Attorney for the W. Dist. of Mich.*, 198 F. Supp. 2d 920 (W.D. Mich. 2002). Thus, if the Tribe claims that the historic Mechoopda Tribe had the requisite connection to the Chico Parcel, the Tribe may establish the connection requirement by establishing that its members are descendants of the Mechoopda Tribe.

Department in 2006.  Nevertheless, the NIGC approved the gaming ordinance in 2007,[4] and the Department took the Chico Parcel into trust for the benefit of the Tribe in 2008.  *See* 73 Fed. Reg. 26142 (May 8, 2008).  According to the County, neither the NIGC nor the Department ever considered the Beckham Report.  Nor, according to the County, did they consider the files from the previously rejected application with respect to the Sutter Land.  Accordingly, the County filed this action challenging the NIGC's approval of the gaming ordinance and the Department's decision to take the Chico Parcel into trust and to allow gaming thereon.

## II.  ANALYSIS

The court must consider two issues in deciding the pending motions: first, whether the County has standing to bring this suit; and second, whether the determination made by the NIGC and the Department—that taking the Chico Parcel into trust for the benefit of the Tribe constitutes a "restoration of lands" thus making the Chico Parcel eligible for Indian gaming— is supported by the administrative record.  The court addresses each in turn.

**A.    Standing**

"[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III'" of the Constitution.  *Davis v. Fed. Election Comm'n*, 128 S.Ct. 2759, 2768 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  As the party invoking federal jurisdiction, the County bears the burden of establishing the three elements of standing.  *Lujan*, 504 U.S. at 560-61.  First, the County must

---

[4] The IGRA requires tribes to obtain NIGC approval of all ordinances regulating Class II and III gaming.

establish that it has suffered an "injury in fact." *Id*. at 560.  An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id*. (internal quotations omitted).  Second, the County must establish that there is a causal connection between the injury and the challenged conduct, meaning that the injury alleged is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id*. (internal citations and quotations omitted).  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id*. at 561 (internal citations and quotations omitted).[5]

---

[5] These elements are not "mere pleading requirements but rather an indispensable part of the plaintiff's case . . . ." *Lujan*, 504 U.S. at 561.  Accordingly, the County must support each element just as it would any other matter on which it bears the burden of proof. *Id*.  With respect to the motion to dismiss, the County may meet its burden through allegations of injury resulting from Defendants' conduct. *Id*.  With respect to the motion for summary judgment, however, the County cannot rest on allegations but rather must set forth specific facts in the administrative record. *See id*.  Because this suit challenges government action, the nature and extent of the facts the County must aver to establish standing depends upon whether the County is an object of the action at issue. *Id*. at 561-62.  Although standing would be presumed if the County were the object of the governmental action, much more is needed here because the alleged injury arises from the regulation of the Tribe. *See id*.  Under these circumstances, causation and redressability hinge on the response of the Tribe to the NIGC's and the Department's decisions. *See id*.  The concern is that some of the essential elements of standing depend upon choices made by independent actors, like the Tribe, whose discretion the court may be unable to presume or predict. *See id*.  Accordingly, the County bears the burden of adducing facts to show that, in response to the decisions of the NIGC and the Department, the Tribe has made or will make choices that injure the County and permit the Court to redress that injury. *See id*. (citations omitted).  Thus, because the County itself is not the object of the challenged governmental actions, it is more difficult for the County to establish standing. *See id*.

The Tribe contends that the County lacks standing to challenge the decisions of the NIGC and the Department. The Tribe focuses its arguments on the first *Lujan* factor,[6] "injury in fact." Specifically, the Tribe points out that the County's only challenge is to the determination that the Chico Parcel qualifies as a "restoration of lands." But, according to the Tribe, the County cannot identify a single "injury in fact" stemming from the restoration of lands determination. Indeed, the Tribe claims that the County has no legally-protected interest in the restoration of lands determination because the IGRA requires neither the Department nor the NIGC to consider impacts on third parties, like the County, nor does it allow third parties to comment on their determinations. Finally, the Tribe contends that the County lacks standing because its challenge lies beyond the zone of interests protected under the statutes.[7]

The County responds that there is no question as to its standing. Specifically, the County contends that it has legally-protected interests at stake because the determinations of the NIGC and the Department allow the Tribe to conduct *illegal* gaming in the County. Further, the County contends that its alleged injury is immediate and non-speculative considering that the NIGC and the Department have sanctioned gaming on the Chico Parcel and that the Tribe has unequivocally manifested its intent to operate such gaming. Among the injuries the County contends it will suffer are adverse environmental effects, increased traffic, safety hazards, zoning conflicts, and

---

[6] The court need not address the second or third *Lujan* factors specifically because neither the Tribe nor the County discuss them and because the second and third factors are easily met provided that the County can establish an injury in fact.

[7] Within its standing argument, the Tribe also contends that the County lacks standing because its claims raise non-justiciable political questions concerning the authority of the United States to recognize the sovereignty of the Tribe and the power of the Tribe to determine its own membership. Setting aside the fact that the Tribe seems to be conflating the standing and political question doctrines, there is no merit to its political question argument.

increased demand for County services. Moreover, according to the County, the Department's acceptance of the Chico Parcel into trust for Indian gaming authorizes the Tribe to violate the County's zoning restrictions, and therefore constitutes a nuisance *per se* under California law. Finally, the County contends that its challenge lies within the zone of interests protected by the IRA and the IGRA.

There is little question that the County has standing. Contrary to the Tribe's suggestion, the County does not allege an injury arising from the "restoration of lands" determination in and of itself. Rather, the County alleges that the gaming operations that the Tribe will conduct on the Chico Parcel will injure the County. The County sets forth a host of possible injuries ranging from environmental effects, to zoning conflicts, to safety hazards. All are concrete, particularized, and imminent considering that, throughout the administrative record and the briefing in this court, the Tribe has made crystal clear that it will commence gaming activities on the Chico Parcel, and those activities likely will have an adverse effect on the County. *See Lujan*, 504 U.S. at 560. Accordingly, the County has standing.

**B.     APA Claims**

The parties and the court agree that the County's claims challenging the actions of the Department and the NIGC should be reviewed under the standards set forth in the APA. Under the APA, the court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). This standard of review is highly deferential and presumes agency action to be valid. *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 997 (D.C.

Cir. 2008). Under the arbitrary and capricious standard, the scope of review is narrow, and a court should not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency determination is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id*. An agency decision is an abuse of discretion if it is "based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. U.S.*, 393 F.3d 1277, 1281 (Fed. Cir. 2005). Although the decisions of the NIGC and the Department are entitled to a presumption of regularity, that presumption does not shield the decisions from a "thorough, probing, in-depth review"; indeed, the court still must "engage in a substantial inquiry." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). Nevertheless, the court "must uphold an agency's action where it has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Transcontinental Gas Pipe Line Corp. v. F.E.R.C.*, 518 F.3d 916, 919 (D.C. Cir. 2008).

The parties agree that the County's challenges to the determinations of the NIGC and the Department boil down to the same legal issue: whether the OGC and the agencies correctly determined that the Chico Parcel constitutes a "restoration of lands" under the IGRA thereby qualifying it for Indian gaming under the ROLE. With respect to this issue, the County makes two arguments: first, that the OGC and the agencies misapplied the leading case law interpreting

the "restoration of lands" provision; and second, that the OGC and the agencies failed to consider contrary evidence, namely, the Beckham Report. The court addresses each in turn.

### 1. *Grand Traverse II* Factors

The leading case interpreting the meaning of the ROLE is *Grand Traverse Band of Ottawa and Chippewa Indians v. United States Attorney for the W.D. Mich.*, 198 F. Supp. 2d 920 (W.D. Mich. 2002) ("*Grand Traverse II*"). The *Grand Traverse II* Court suggested three factors to consider in determining whether a parcel of land constitutes a "restoration of lands" for a given tribe: (1) the factual circumstances of the acquisition; the (2) location of the acquisition; and (3) the temporal relationship of the acquisition to the tribal restoration. 198 F. Supp. 2d at 935. Although the parties agree that the *Grand Traverse II* factors should guide the court, they disagree as to whether their application supports a conclusion that the Chico Parcel constitutes a restoration of lands. The parties focus on the second *Grand Traverse II* factor. Because the first and third *Grand Traverse II* factors support the Opinion and the agency decisions and because there is little argument between the parties on these factors, the court likewise will focus on the second *Grand Traverse II* factor—location.

Defendants contend that both the NIGC and the Department properly determined that the Chico Parcel constitutes a restoration of lands.[8] They explain that the NIGC's determination

---

[8] Defendants contend that the court should construe the IGRA liberally in favor of the Tribe under the Indian Canon of statutory construction. *See City of Roseville v. Norton*, 348 F.3d 1020, 1031-32 (D.C. Cir. 2003) (requiring ambiguous provisions to be construed liberally in favor of Indians). The County responds that the "restoration of lands" provision should not be so construed because it is not ambiguous. Because courts have held the "restoration of lands" provisions to be ambiguous, the Tribe is entitled to a liberal construction of that provision in its favor. *See id.*

relied in large part on the Opinion and that the Department's determination relied in large part on the Opinion and the NIGC determination. With respect to the Opinion, Defendants contend that the OGC fully evaluated the *Grand Traverse II* factors and "articulated a rational connection" between the record facts concerning the Chico Parcel and the conclusion that it constitutes a restoration of lands. *See Transcontinental Gas Pipe Line Corp.*, 518 F.3d at 919. Specifically, with respect to the location factor, Defendants contend that the OGC considered voluminous evidence submitted by the Tribe including a report of a historian, similar to Beckham, all of which indicated that the members of the Tribe were in fact descendants of the original Mechoopda Tribe and that the Tribe had a geographic and cultural connection to the Chico Parcel. Defendants go on to argue that the County cannot identify a single deficiency in the OGC's analysis. Moreover, according to Defendants, the County cannot seek to invalidate the action of either the NIGC or the Department simply because they relied on that analysis, especially considering that it was complete and correct. Accordingly, Defendants ask this court to reject the County's challenge.

The County responds that the OGC and the agencies erred in determining that the Chico Parcel qualifies as a "restoration of lands" and that their respective determinations are arbitrary, capricious, and an abuse of discretion. Relying almost exclusively on the analysis and conclusions of the Beckham Report, the County contends that the members of the Tribe are not actual descendants of the original Tribe but rather a disparate group of Indians whose only bond is that the Bidwell Ranch employed them or their ancestors. This is determinative, according to the County, under its reading of the second *Grand Traverse II* factor. According to the County, the Chico Parcel may only constitute a restoration of lands if the Tribe can prove its members

descended from a tribe with a historic connection to that specific land.  Although the County seems to admit that the original Mechoopda Tribe had such a connection to the Chico Parcel, it contends that the Tribe has no connection to the original Mechoopda Tribe and thus no connection to the Chico Parcel.  Further, the County contends that the Opinion is non-binding and entitled to neither deference nor respect.  Neither are the NIGC nor the Department determinations because they rely heavily on the Opinion.  Therefore, according to the County, the Tribe cannot satisfy the second *Grand Traverse II* factor, location, and, likewise, the Chico Parcel cannot constitute a restoration of lands.

   Defendants rejoin as follows.  First, they contend that the OGC and the agencies correctly concluded that the Tribe descended from the original Mechoopda Tribe, and therefore, the Tribe has a sufficient connection to the Chico Parcel to qualify it as a restoration of lands.  Second, even accepting the County's contention that the Tribe did not descend from the original Mechoopda Tribe, Defendants contend that they are a restored tribe and thus entitled to land-in-trust as close to the former Bidwell Ranch as possible considering that the Bidwell land is no longer available.  In this, Defendants argue that the County takes too restrictive a view of the location requirement.  Specifically, according to Defendants, the Tribe need not show a connection to the precise land at issue if their ancestral lands are unavailable and the lands at issue are in close proximity to the ancestral lands especially considering that the purpose of the IGRA is to restore tribes whose federal recognition was rescinded to as close a status as possible to those tribes whose recognition was not.  According to Defendants, providing a tribe with land is a necessary element of restoring such parity.  At bottom, Defendants contend that the County can do little more than tout the Beckham Report as a basis for disagreeing with the OGC and

agency determinations. According to Defendants, this is insufficient to allow the court to set aside the determination that the Chico Parcel constitutes a restoration of lands, especially where, as here, the conclusion is rooted in a sound analysis.

The court agrees with Defendants that the County relies on too restrictive an interpretation of the IGRA in support of its contention that the Chico Parcel cannot qualify as a "restoration of lands." The County contends that the term "restoration of lands" should be interpreted as including only a restored tribe's former rancheria. But the IGRA does not define "restoration of lands"; therefore, courts have held it to be ambiguous and interpreted it broadly. *See, e.g., City of Roseville v. Norton*, 348 F.3d at 1020, 1026-27 (D.C. Cir. 2003). If a broad interpretation is permissible, it certainly is in order here considering that the Tribe's former rancheria, the Chico Rancheria, is no longer available for restoration because the City of Chico and the University have subsumed it. Accordingly, the Tribe sought to acquire lands as near as possible to its former Rancheria and, according to the OGC and agencies, within its original ancestral homeland, the Chico Parcel. Applying the *Grand Traverse II* factors and *City of Roseville* in light of the administrative record, the agency decisions must stand because they considered the relevant factors and articulated a rational connection between the administrative record and their conclusions. *See Transcontinental Gas Pipe Line Corp.,* 518 F.3d at 919.

### 2. Beckham Report

In addition to contending that the OGC and the agencies should have concluded that the Chico Parcel does not constitute a restoration of lands, the County contends that their analyses were inadequate because they relied too heavily on information submitted by the Tribe and failed

to consider the Beckham Report, Sutter Land application file, and other contrary evidence. Defendants acknowledge that the NIGC did not consider the Beckham Report, but contend that it had no obligation to do so, especially considering that the Beckham Report was prepared three years after the OGC Opinion upon which the NIGC so strongly relied.  With respect to the Department, Defendants point out that the Beckham Report is in the Department's administrative record and that there is no record evidence establishing that the Department failed to consider the Beckham Report.

This Circuit has held that "an agency rule is arbitrary and capricious if the agency relies upon improper factors, *ignores important arguments or evidence*, [or] fails to articulate a reasoned basis for the rule . . . ." *Natural Res. Def. Council, Inc. v. E.P.A.*, 822 F.2d 104, 111 (D.C. Cir. 1987) (emphasis added).  Although "an agency has a duty to consider all the evidence and to explain its decision fully . . . [i]t does not necessarily follow, however, that the failure to mention certain evidence means that it was not considered, nor does it follow that an explanation is incomplete unless it dutifully lists all the evidence that the Commission examined." *Lorion v. United States Nuclear Regulatory Comm'n*, 785 F.2d 1038, 1042 (D.C. Cir. 1986) (citation omitted).  The court should uphold an agency decision "as long as all the necessary factors were considered, and provided that the statement of reasons given permits a rational understanding of the basis for the decision.  *Id.* (internal citation and quotation omitted).  The court has considered the briefing, scoured the record, and pressed the parties on this issue during oral argument. Having done so, the court cannot find that the County has done enough to justify setting aside the agencies' actions here.  Because the agencies considered "the necessary factors" and because

15

their explanation "permits a rational understanding of the basis for the decision," the court upholds their decisions. *See id.*

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, or, in the alternative for summary judgment [##41, 46] is **GRANTED**, the Tribe's motion to dismiss, or, in the alternative for summary judgment [##42, 47] is **GRANTED**, and the County's cross-motion for summary judgment [#55] is **DENIED**. An appropriate order accompanies this Memorandum Opinion.

                                        Henry H. Kennedy, Jr.
                                        United States District Judge