UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

**BUTTE COUNTY, CALIFORNIA,**

           **Plaintiff,**

           v.                               1:08-CV-519
                                                      (FJS)

**JONODER OSCEOLA CHAUDHURI, Chairman,
National Indian Gaming Commission; E. SEQUOYAH
SIMERMEYER, Commissioner, National Indian
Gaming Commission; DIRK A. KEMPTHORNE,
Secretary, United States Department of the Interior;
LAWRENCE S. ROBERTS, Acting Assistant Secretary
- Indian Affairs, United States Department of the
Interior; and UNITED STATES DEPARTMENT
OF THE INTERIOR,**

           **Defendants,[1]**

**MECHOOPDA INDIAN TRIBE OF CHICO
RANCHERIA, CALIFORNIA,**

           **Intervenor-Defendant**

---

**APPEARANCES**                                   **OF COUNSEL**

**DICKINSON WRIGHT PLLC**             **DENNIS J. WHITTLESEY, ESQ.**
1875 Eye Street, NW
Suite 1200
Washington, D.C. 20006
Attorneys for Plaintiff

**THE COUNTY COUNSEL'S OFFICE**        **BRUCE S. ALPERT, ESQ.**
25 County Center Drive
Oroville, California 95965
Attorneys for Plaintiff

---

[1] Since the individual Defendants are named in their official capacities, the Court has updated the caption to reflect the names of the current holders of these positions.

**U.S. DEPARTMENT OF JUSTICE**      **LAURA L. MAUL, ESQ.**
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Attorneys for Defendants

**ANDERSON INDIAN LAW**      **MICHAEL J. ANDERSON, ESQ.**
418-B C Street, NE
Washington, D.C. 20002
Attorneys for Intervenor-Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court are Plaintiff Butte County's ("Plaintiff County") motion for summary judgment, *see* Dkt. No. 115; Defendants' (collectively the "United States" or the "Department") cross-motion for summary judgment, *see* Dkt. No. 117; and Intervenor Defendant's (the "Tribe") cross-motion for summary judgment, *see* Dkt. No. 119.

The Court heard oral argument in support of and in opposition to these motions on May 10, 2016, and reserved decision at that time. The following constitutes the Court's written disposition of these motions.

### II. PROCEDURAL BACKGROUND

In 1996, the Tribe acquired a parcel of land as a potential site for a revenue-generating gaming operation. After the Department advised the Tribe that the parcel was not eligible for gaming under the Indian Gaming Regulatory Act ("IGRA"), the Tribe acquired a different parcel of land (the "Chico Parcel") in 2001. The Chico Parcel, approximately 625 acres, is located near the

City of Chico, in Butte County, California.

In 2002, the Tribe requested that the National Indian Gaming Commission ("NIGC") provide an opinion regarding whether the Chico Parcel was eligible for gaming. The NIGC issued an opinion in 2003 that the Chico Parcel would constitute "restored lands" under the IGRA, and the Department concurred with the NIGC's opinion.

In 2004, the Tribe requested that the Department take the approximately 625-acre Chico Parcel into trust for gaming purposes. In 2006, Plaintiff County objected to the Tribe's application and provided the Department with the report of Dr. Stephen Dow Beckham ("2006 Beckham Report"). The 2006 Beckham Report was included as part of the Department's administrative record. In 2008, the Secretary of the Department approved the Tribe's trust application ("2008 Decision"). Plaintiff County challenged the approval in this Court, and the Court (Kennedy, J.) upheld the Secretary's decision. *See Butte Cnty. v. Hogen*, 609 F. Supp. 2d 20 (D.D.C. 2009). Plaintiff County appealed.

On July 13, 2010, the United States Court of Appeals for the District of Columbia vacated the 2008 Decision and remanded the case on the ground that "[t]here [was] no indication that the Interior Department . . . actually considered the [2006 Beckham Report]." *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

After remand, the Court (Kennedy, J.) requested the parties' positions regarding compliance with the Court of Appeals' remand order. *See* Dkt. No. 70. After reviewing the parties' submissions, the Court issued an Order on December 22, 2010, in which the Court "remanded [this matter] to the Secretary of the Interior to reconsider his decision to acquire the Chico Parcel into trust for gaming purposes. The Secretary shall include and consider the [2006] 'Beckham Report' as

part of the administrative record on remand." *See* Dkt. No. 71.

On remand, the Department concluded that, in light of the passage of time and intervening developments in the law, the existing administrative record would not serve as an adequate basis for a new decision. *See* New Administrative Record ("AR NEW") at 5386. In letters dated April 12, 2011, former Deputy Solicitor - Indian Affairs Patrice Kunesh explained the specific procedural process that the Department would use on remand. *See id.* at 4044 (to Plaintiff County); 4045-46 (to the Tribe) (collectively "April 12 letter"). In the April 12 letter, Ms. Kunesh explained that Plaintiff County would have thirty days to submit any information it wished the Secretary to consider during the remand, and the Tribe would then have thirty days to respond to Plaintiff County's submissions. *See id.* The April 12 letter also requested both parties' views on whether recently promulgated regulations should apply to the remand. *See id.* (referring the parties to 25 C.F.R. Part 292).

The Tribe objected to the proposed remand process. By letter dated April 21, 2011, the Tribe's Chairman, Dennis Ramirez, requested that the Department base its new decision entirely on the existing administrative record. *See id.* at 4049-52. This request arose out of the Tribe's concern with the efficiency of the process as well as the fact that Plaintiff County would be afforded an opportunity to file additional submissions with the Department. *See id.* By letter dated April 29, 2011, the Department declined to reconsider the remand process, explaining that

> [t]he process set forth was judiciously crafted and thoroughly vetted
> within the Department of the Interior and with the Department of
> Justice in order to ensure that the Secretary's decision on remand
> avoids the same procedural deficiencies that the D.C. Circuit had
> identified in the preceding litigation and forecloses any new bases for
> a challenge that may have arisen since the Secretary's original
> decision.

*See id.* at 4059.

By letter dated May 12, 2011, Plaintiff County provided its submission to the Department. *See id.* at 4063-67. Plaintiff County provided its views on the new Part 292 regulations and referred the Secretary to numerous documents that had previously been submitted, including the 2006 Beckham Report, a second report by Dr. Beckham ("2010 Beckham Report"), a letter with an attached exhibit containing Plaintiff County's commentary on a key document in the administrative record, and all of the pleadings and briefs from earlier in the litigation.

On June 28, 2011, after seeking and receiving a fifteen-day extension of time, the Tribe submitted a "Report and Response" to Plaintiff County's May 12 submission. *See id.* at 4110-29. The Tribe's submission included the report of Dr. Shelly Tiley. *See id.* at 4131-54 ("Tiley Report"). On July 12, 2011, in accordance with her first letter, Ms. Kunesh wrote to both parties thanking them for their submissions and informing them that the record was closed. *See id.* at 4248.

On July 18, 2011, Plaintiff County wrote to Ms. Kunesh, requesting that she either permit Plaintiff County to respond to the Tribe's June 28 submission or that she reject that submission and exclude it from the Secretary's consideration. *See id.* at 4252-58. On August 11, 2011, Ms. Kunesh agreed to reopen the administrative record "in the spirit of cooperation," giving Plaintiff County twenty days to file a further submission and the Tribe ten days for a reply. *See id.* at 4262. Instead of submitting a response or describing why the twenty-day period was insufficient to respond and asking for an extension of the allotted time, Plaintiff Country wrote to Ms. Kunesh, stating that her decision was "simply not acceptable." *See id.* at 4263-65.

On September 19, 2011, Plaintiff County filed a "Motion to Clarify December 22, 2010 Remand Order and/or Limit the Administrative Record Upon Remand." *See* Dkt. No. 75. In its

motion, Plaintiff County requested that the Court instruct the Department to include Plaintiff County's May 12 submission and previous submissions in its review and exclude the Tribe's June 28 submission. *See id.* at 3.

After the Department and the Tribe had filed their briefs in opposition to Plaintiff County's motion, *see* Dkt. Nos. 78-79, the parties appeared before this Court. The Court denied Plaintiff County's motion, explaining that it was the Department's prerogative to determine what materials were relevant to its decision. *See* Dkt. No. 101-1 at 13. The Court also stated that Plaintiff County had been afforded "ample time to submit whatever other information" it wanted to the Department. *See id.* at 14.

On January 24, 2014, the Secretary issued a new decision approving the trust acquisition ("2014 Decision"). *See* AR NEW at 5384-5436. The Chico Parcel was taken into trust shortly thereafter. Notice of the 2014 Decision was published in the Federal Register on February 5, 2014, and a technical correction to the land description was published on February 27, 2014. *See* 79 Fed. Reg. 6,917 (Feb. 5, 2014); 79 Fed. Reg. 11, 122 (Feb. 27, 2014). The Department filed a Notice of the 2014 Decision with this Court on February 28, 2014. *See* Dkt. No. 88.

On November 20, 2014, Plaintiff County filed a "Motion for Remand to Defendants for Reconsideration of January 2014 Trust Acceptance." *See* Dkt. Nos. 89, 90. Together with its motion, Plaintiff County filed a new expert report of Dr. Beckham dated July 9, 2014 ("2014 Beckham Report"). *See* Dkt. Nos. 91-1, 92-1, 93-1. The Court denied Plaintiff County's motion for remand as premature. *See* Dkt. No. 113. The Department lodged the Administrative Record of the 2014 Decision with the Court on May 5, 2015. *See* Dkt. No. 114. The parties then filed the pending cross-motions for summary judgment. *See* Dkt. Nos. 115, 117, 119.

## III. DISCUSSION

There are four issues that the Court must address to resolve the pending motions for summary judgment. First, did the Department exceed the scope of the Court of Appeals' and the District Court's remand? Second, in reviewing the Secretary's 2014 Decision should the Court consider the 2014 Beckham Report, which was not part of the administrative record at the time the Secretary issued his 2014 Decision? Third, was the Secretary's 2014 Decision arbitrary and capricious? Finally, if the Court finds that the Secretary's 2014 Decision is arbitrary and capricious, what is the appropriate relief?

### A.     The scope of the Court of Appeals' and the District Court's remand

The District of Columbia Circuit Court of Appeals' remand was very broad. The Court merely stated that "[t]he case is remanded for further proceedings consistent with this opinion." *Butte Cnty.*, 613 F.3d at 196-97. To be "consistent with this opinion," the Secretary was required to consider the 2006 Beckham Report on remand. The Court of Appeals did not place any other requirements or restrictions on the scope of the remand.

Likewise, the District Court's remand was very broad. After asking for and reviewing the parties' positions with respect to the scope of the remand, the District Court (Kennedy, J.) ordered the matter "remanded to the Secretary of the Interior to reconsider his decision to acquire the Chico Parcel into trust for gaming purposes. The Secretary shall include and consider the [2006] 'Beckham Report' as part of the administrative record on remand." *See* Dkt. No. 74.

Finally, when this Court considered Plaintiff County's motion to clarify the District Court's remand order, this Court stated on the record, "I think the remand is clear on its face that the matter

goes back before the Department of the Interior for [its] consideration, taking into consideration the [2006] Beckham report and other submissions you've made since then. Whatever else the Department of Interior may feel may be relevant to the decision as to the issues involved, I think that's [its] prerogative." *See* Dkt. No. 101-1 at 14.

"It is beyond dispute that a reviewing court may allow an agency to supplement the record with additional evidence following remand." *New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103, 114 (D.D.C. 2010) (citing *Union Elec. Co. v. Fed. Energy Regulatory Comm'n*, 890 F.2d 1193, 1196 (D.C. Cir. 1989) ("On remand the Commission may wish to supplement the record with such [additional] evidence.")). Nor is there any dispute that "an agency's review on remand must be responsive to the court's mandate." *Id.* (citing *Process Gas Consumers Grp. v. Fed. Energy Regulatory Comm'n*, 292 F.3d 831, 840 (D.C. Cir. 2002)).

Furthermore, when, as in this case, a court "'does not require fact gathering on remand . . . the agency is typically authorized to determine, in its discretion, whether such fact gathering is needed.'" *Id.* at 115 (quotation omitted) (citing *PPG Indus., Inc. v. United States*, 52 F.3d 363, 366 (D.C. Cir. 1995) ("there is no principle of administrative law that restricts an agency from reopening proceedings to take new evidence after the grounds upon which it relied are determined by a reviewing court to be invalid.")). This approach is compatible "with the general preference to leave to the agency's discretion to decide how, in light of internal organizational considerations, it may best proceed upon remand." *Id.* (citing *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333, 96 S. Ct. 579, 46 L. Ed. 2d 533 (1976) (per curiam)).

Consistent with these general principles, the Court finds that, given that the only requirement on remand was that the Secretary consider the 2006 Beckham Report in reaching his decision, it was

well within the Department's discretion to request additional information from the parties and to consider such new information, together with the 2006 Beckham Report and other information that was already in the record, as a basis for the Secretary's decision.

With regard to Plaintiff County's specific complaint, i.e., that the Secretary should not have considered the Tribe's June 28th submission, in particular the Tiley Report, because it was a "new application" and did not respond to Plaintiff County's May 12th submission but, rather, set forth an entirely new basis to support the Tribe's application, the Court finds Plaintiff County's argument to be without merit.

Although the Administrative Procedures Act ("APA") did not require it to do so, the Department, "in the spirit of cooperation," reopened the record and provided Plaintiff County with an opportunity to file a further submission in response to the Tribe's June 28th submission. Instead of taking advantage of this opportunity, Plaintiff County responded that it could not accept the Department's decision and would file a motion asking the District Court to order that the Department "(1) reject the Tribe's June 28 submission, (2) conduct the remand review in accordance with the parties' representation that the remand would concern reconciliation of the [2006] Beckham Report with the original administrative record, and (3) be prohibited from utilizing or relying on any of the June 28 materials during the remand review." *See* Dkt. No. 75-24 at 2. As noted, this Court denied the motion to which Plaintiff County referred in this letter, holding that, in addition to considering the 2006 Beckham Report, the Secretary could take into consideration whatever else he believed might be relevant to his decision. *See* Dkt. No. 101-1 at 14. Having decided not to take advantage of the opportunity to file additional submissions with the Department, Plaintiff County cannot now argue that it did not have an opportunity to respond to the Tiley Report.

Furthermore, and more importantly, the law applicable to informal adjudications under the APA does not support Plaintiff County's position. As the court noted in *New Life*, "the APA does not confer upon participants in informal adjudications [such as this one] the right to 'present his case or defense by oral or documentary evidence, to submit rebuttal evidence, [or] to conduct such cross-examination as may be required for a full and true disclosure of the facts.'" *New Life*, 753 F. Supp. 2d at 117 (quoting [5 U.S.C.] § 556(d)). In fact, 5 U.S.C. § 555(e) imposes only modest obligations on the agency:

> Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.

5 U.S.C. § 555(e).

Moreover, it is clear that "in the informal adjudication setting, 'courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA' or the governing legislation." *New Life*, 753 F. Supp. 2d at 120 (quotation omitted). Even where an agency, after remand, requests and receives new submissions from one participant but denies a request from other participants for discovery of background documents supporting the other participant's new submissions, the District of Columbia has rejected procedural challenges to the procedures that the agency used on remand, holding that the agency had "'broad discretion to decide what procedures to use in fulfilling its statutory responsibilities.'" *New Life*, 753 F. Supp. 2d at 121 (quoting [*Process Gas Consumers Grp.*, 930 F.2d] at 930); *see also Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n v. Mar. Admin.*, 215 F.3d 37, 42-43 (D.C. Cir. 2000) (rejecting a claim that "fundamental fairness" may be used to create procedural rights where the APA envisions none).

Accordingly, for all of these reasons, the Court finds that the Secretary was not required to provide Plaintiff County with any opportunity to respond to the Tiley Report and that, when it did so and Plaintiff County failed to take advantage of that opportunity, the Department did not err in closing the record after the time that it had provided to Plaintiff County had expired. Furthermore, the Court concludes that the Secretary did not exceed the scope of the Court of Appeals' and the District Court's remand by considering the Tribe's June 28th submission, including the Tiley Report, as well as the 2006 Beckham Report and other documents in the record in reaching his 2014 Decision.

**B.     The 2014 Beckham Report**

Plaintiff County contends that the Court should consider the 2014 Beckham Report in determining whether the Secretary's 2014 decision was arbitrary or capricious. Although it is not entirely clear, it appears that Plaintiff County supports this argument based on two alternative theories: (1) that the Court should supplement the record with the 2014 Beckham Report and (2) that the Court should consider the 2014 Beckham Report even though it is an extra-record document.

"Ordinarily, judicial review under the APA is confined to 'the full administrative record that was before the Secretary at the time he made his decision.'" *Styrene Info. & Research Ctr., Inc. v. Sebelius*, 851 F. Supp. 2d 57, 62 (D.D.C. 2012) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977)). In most cases, a party that seeks to supplement the administrative record does so based on its argument that the agency did

-11-

not fulfill its obligation to "compile for the court an administrative record that includes 'all information it considered either directly or indirectly.'" *Id.* (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010)) (citation omitted). "'[A]bsent clear evidence to the contrary, an agency is entitled to a presumption that it properly designated the administrative record.'" *Id.* (quoting *Calloway v. Harvey*, 590 F. Supp. 2d 29, 37 (D.D.C. 2008)). To rebut this presumption of regularity, the party that seeks to supplement the record must come forward with "'concrete evidence that the documents it seeks to "add" to the record were actually before the decisionmakers.'" *Id.* at 63 (quoting *Marcum*, 751 F. Supp. 2d at 78).

In this case, Plaintiff County appears to argue that the 2014 Beckham Report was "before" the decisionmaker because the Department knew that Plaintiff County had, or was gathering, information to rebut the Tiley Report. Clearly, the Department knew that Plaintiff County disagreed with the Tiley Report and wanted an opportunity to submit additional information to rebut the findings in the Tiley Report; however, this "knowledge" that Plaintiff County might have some information that might be adverse to the information that the Tribe had submitted in the Tiley Report does not equate to a finding that such information was before the decisionmaker. The 2014 Beckham Report, i.e., Plaintiff County's rebuttal to the Tiley Report, post-dated the Secretary's 2014 Decision by more than six months. Thus, it is impossible for Plaintiff County to argue that the Secretary considered but did not include in the administrative record that the Department compiled for the Court the document that Plaintiff County now seeks to have the Court consider. *See Pacific Shores Subdivision California Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (stating that "[a] broad application of the phrase 'before the agency' would undermine the value of judicial review: '[I]nterpreting the world "before" so broadly as to encompass any

potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless."'" (quoting *Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 57 n.7 (D.D.C. 2003)). Accordingly, the Court denies Plaintiff County's request to supplement the record with the 2014 Beckham Report.

Alternatively, Plaintiff County asks the Court to consider the 2014 Beckham Report as extra-record evidence, i.e., "'"evidence outside of or in addition to the administrative record that was not . . . considered by the agency."'" *Styrene Info.*, 851 F. Supp. 2d at 63 (quoting *Calloway*, 590 F. Supp. 2d at 37 (quoting *Pac. Shores*, 448 F. Supp. 2d at 5)). To support this argument, Plaintiff County relies on *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989), in which the District of Columbia Circuit stated that a reviewing court should consider extra-record evidence if it fell within one of eight exceptions. *See id.* at 991. As the court noted in *Styrene Info.*, however, it appears that the District of Columbia Circuit has narrowed the exceptions to four: "(1) when the agency failed to examine all relevant factors; (2) when the agency failed to explain adequately its grounds for decision; (3) when the agency acted in bad faith; or (4) when the agency engaged in improper behavior." *Styrene Info.*, 851 F. Supp. 2d at 63 (citing *IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 (D.C. Cir. 1997); *Cape Hatteras Access Pres. Alliance v. U.S. Dep't. of Interior*, 667 F. Supp. 2d 111, 116 (D.D.C. 2009) (noting the Circuit's narrowing of the *Esch* exceptions in its *IMS* decision)).

Allowing review of extra-record information is the exception rather than the rule. "'[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Id.* at 68 (quoting *Camp v. Pitts*, 411 U.S. 138, 142, 93 S. Ct. 1241, 36 L. Ed. 2d 106 (1973) (*per curiam*)); *see also Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (quotation omitted) (same). Furthermore,

-13-

"[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Axiom Res. Mgmt.*, 564 F.3d at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).

As the court noted in *Axiom Res. Mgmt.*, "*Esch*'s vitality within the D.C. Circuit is questionable in light of more recent opinions by that court which demonstrate a more restrictive approach to extra-record evidence." *Id.* (citing *IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 (D.C. Cir. 1997) (affirming the district court's decision to strike affidavits not in the agency record based on the appellant's failure to show that "the agency failed to examine all relevant factors or to adequately explain its grounds for decision, or that the agency acted in bad faith or engaged in improper behavior"); *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 457-58 (D.C. Cir. 1994) (explaining that additional administrative discovery is permissible only if necessary "for effective judicial review" or if the existing "record cannot be trusted")) (footnote omitted).[2,3]

In this case, Plaintiff County has not provided any reason for this Court to ignore the APA's requirement that, in reviewing the Secretary's 2014 Decision, the Court should limit its review to the

---

[2] The court in *Axiom Res. Mgmt.* also noted that "the eight exceptions to the rule against extra-record evidence described in *Esch* originated in an article, predating *Florida Power & Light*, which described itself as 'a guide for lawyers challenging informal administrative action when they are attempting to submit evidence not in the formal record as assembled by the agency.'" *Axiom Res. Mgmt.*, 564 F.3d at 1380 (quoting Steven Stark & Sarah Wald, Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action, 36 Admin. L. Rev. 333, 336 (1984)).

[3] The *Axiom Res. Mgmt.* court also noted that, "[i]n an unpublished opinion, the D.C. Circuit repudiated *Esch* more directly, noting that the eight exceptions listed were dicta and of limited 'probative value.'" *Axiom Res. Mgmt.*, 564 F.3d at 1380 n.3 (quoting *Peterson Farms I v. Espy*, 15 F.3d 1160 (Table), 1994 WL 26331, at *3 (D.C. Cir. Jan. 25, 1994)).

record that was before the Secretary and that the Secretary considered in reaching his decision. Accordingly, the Court denies Plaintiff County's request to consider the 2014 Beckham Report in determining whether the Secretary's 2014 Decision was arbitrary and capricious.

### C.     The Secretary's 2014 Decision

Section 706(2)(A) of the APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. § 706(2)(A).  The party that challenges the agency action "bears the burden of proof." *New Life*, 753 F. Supp. 2d at 112 (citation omitted).  "[T]o avoid a finding that the challenged agency action was arbitrary or capricious, the 'agency must [have] examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'" *Id.* at 113 (quoting *PPL Wallingford Energy LLC v. Fed. Energy Regulatory Comm'n*, 419 F.3d 1194, 1198 (D.C. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, 103 S. Ct. 2856)).  Furthermore, "[i]n articulating the reason for its action, the agency 'must have provided a "rational connection between the facts found and the choice made."'"  *Id.* (quotation omitted).

> A reviewing court may find an agency's decision arbitrary or capricious if
>
> > (i) its explanation runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise; (ii) the agency entirely failed to consider an important aspect of the problem or issue; (iii) the agency relied on factors which Congress did not intend the agency to consider; or (iv) the decision otherwise constitutes a clear error of judgment.

*Id.* (citations omitted).

"[I]t is not enough for the agency decision to be incorrect; so long as it has some rational basis, the

court is bound to uphold the decision." *Id.* (citation omitted). In the end, the reviewing court cannot substitute its judgment for the agency's. *See id.* (citation omitted).

Plaintiff County primarily argues that the Secretary's 2014 Decision is arbitrary and capricious because (1) the Secretary considered the Tiley Report, which was not relevant evidence, and did not allow Plaintiff County sufficient time to submit rebuttal to the Tiley Report, which would have been relevant evidence; (2) the Secretary did not reconcile his decision with the 2006 Beckham Report; and (3) the Secretary did not consider evidence that was contrary to the Department's position.

The Court has reviewed the Secretary's 2014 Decision thoroughly and has taken into consideration Plaintiff County's arguments. The 2014 Decision is more than fifty pages in length, thoroughly discusses the evidence before the Department, and provides an explanation for each of the Secretary's conclusions. The Secretary begins by noting that his decision includes his "review of the [2006] Beckham Report, as well as other information received from the parties, and incorporates the findings and conclusions of the 2008 Decision and supporting materials." *See* Dkt. No. 127-2 at 72 (AR NEW 0005384). Furthermore, when considering the Tribe's history to determine its historical connection to the land that the Tribe wanted the Department to take into trust, the Secretary noted that he had derived the recitation of the Tribe's history from his "review of all of the documents submitted by the Tribe and the County, as well as his own independent research." *See id.* at 78 (AR NEW 0005390). In his 2014 Decision, the Secretary cites to many sources to support his conclusions, only one of which is the Tiley Report. In particular, the Secretary analyzed Plaintiff County's view of the Tribe's historical connection to the land, declined to adopt Plaintiff County's conclusions that the Tribe was a creation of the Bidwells, and explained his reasons for doing so.

*See id.* at 91 (AR NEW 0005403). Although these are only a few examples of the Secretary's review of the record and the conclusions he drew therefrom, they serve to demonstrate that, contrary to Plaintiff County's arguments, the Secretary's 2014 Decision was thorough and well-reasoned. Furthermore, the Court finds that, in his 2014 Decision, the Secretary included explanations that were consistent with the evidence before the agency and considered all of the relevant issues. Accordingly, the Court holds that the Secretary's 2014 Decision was not arbitrary or capricious.

## IV. CONCLUSION

Having thoroughly reviewed the entire record in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff County's motion for summary judgment, *see* Dkt. No. 115, is **DENIED**; and the Court further

**ORDERS** that Defendants' cross-motion for summary judgment, *see* Dkt. No. 117, is **GRANTED**; and the Court further

**ORDERS** that Intervenor-Defendant's cross-motion for summary judgment, *see* Dkt. No. 119, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and Intervenor Defendant and close this case.

**IT IS SO ORDERED.**

Dated: July 15, 2016
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge